Bobby Lee WATSON, Appellant,

v.

CARGILL, INC., NUTRENA
DIVISION, Appellee.

No. 5901.

Court of Civil Appeals of Texas,
Waco.

Sept. 28, 1978.

Rehearing Denied Nov. 9, 1978.

Andy J. McMullen, McMullen, Connally, Robertson, Jordan, Holliman & Campbell, Inc., Hamilton, for appellant.

John L. Bates, Waco, for appellee.

HALL, Justice.

Plaintiff-Appellee Cargill, Inc., Nutrena Feed Division, brought this suit for *quantum meruit* to recover $4,554.72, alleged to be the reasonable value of dairy cattle feed sold and delivered by plaintiff to defendant-appellant Bobby Lee Watson on "a running account" in the regular course of business at defendant's instance and request. Plaintiff sued also for reasonable attorney's fees in the amount of $1,518.24. Defendant answered with a general denial, and with special pleas that (1) part of the account sued upon was barred by the two-year statute of limitation and (2) that he was not indebted to plaintiff on the last four sales sued upon because, by agreement of the parties, he had paid for each on delivery, but plaintiff had erroneously credited those payments to the oldest charges on his account. During the course of the trial, by way of trial amendment, defendant also pleaded that plaintiff had charged him usurious interest on the account subjecting plaintiff to the penalties set forth in Article 5069–1.06, for which he prayed recovery.

Trial was to the court without a jury. During the hearing the court determined that defendant's plea of limitation was good, and refused to hear evidence proffered by plaintiff relating to the portion of the account which allegedly fell within the two-year limitation period. Plaintiff perfected its bill of exception on that proof. After the trial, the court sustained defendant's plea of payment on delivery of the last four purchases from plaintiff, but denied defendant any recovery on his pleadings of usury. Under those rulings judgment was rendered for plaintiff for $1,192.41 on the account, plus $500.00 attorney's fees.

Express findings of fact and conclusions of law were neither requested by the parties nor filed by the court. Therefore, it must be presumed that all necessary fact findings were impliedly made by the court in support of the judgment. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

Both parties complain on appeal. Defendant asserts (1) the court erred in allowing plaintiff any recovery on the account because there was no evidence of delivery or value of the feed sold to him; (2) the court erred in allowing plaintiff attorney's fees because when this case was tried and determined there was no legal basis for such fees; and, (3) under the undisputed evidence, the court erred in failing to award defendant the penalties under the usury statutes, including an award of reasonable attorney's fees. Plaintiff contends the court erred (1) in affirming defendant's plea of limitation and failing to consider plaintiff's proof as to all the open accounts; and (2) in holding that plaintiff could not credit cash payments made by defendant on the last four deliveries to the oldest unpaid invoices on the account.

### Limitation

This case was originally filed by plaintiff on January 9, 1976, in the 19th Judicial District Court in McLennan County, as a suit on verified open account under the provisions of Rule 185, Vernon's Tex.Rules Civ.Proc., for the sum $4,554.72. The following itemized statement of account was attached to plaintiff's original petition in support of the suit:

### STATEMENT OF ACCOUNT

| Date | Transaction | Charges | Credits | Balance |
|---|---|---|---|---|
| 1–13–75 | Invoice #68497 | 478.80 | | 478.80 |
| 1–17–75 | Invoice #68555 | 875.77 | | 1,354.57 |
| 1–20–75 | Invoice #68572 | 589.40 | | 1,943.97 |
| 1–24–75 | Invoice #68630 | 978.67 | | 2,922.64 |
| 1–27–75 | Invoice #68652 | 705.51 | | 3,628.15 |
| 1–31–75 | Invoice #68719 | 926.57 | | 4,554.72 |

Copies of the six invoices listed on the statement of account were also attached to the original pleadings as exhibits.

On February 10, 1976, on defendant's plea of privilege, the case was transferred to Hamilton County.

On February 18, 1977, after the case was docketed in the District Court in Hamilton County, plaintiff filed its first amended original petition, which was also in the nature of a suit on verified open account. However, the statement of account attached to the amended petition was as follows:

BOBBY LEE WATSON
Route 3
Hico, Texas

### STATEMENT OF ACCOUNT

| Date | Item | Charges | Credits | Balance |
|---|---|---|---|---|
| 11–18–74 | Invoice #67873 | 778.16 | | 778.16 |
| 11–30–74 | Invoice #67908 | 1,167.24 | | 1,945.40 |
| 11–25–74 | Invoice #67952 | 738.40 | | 2,683.80 |
| 11–29–74 | Invoice #67998 | 768.22 | | 3,452.02 |
| 11–29–74 | Invoice #68015 | 686.70 | | 4,138.72 |
| 12–3–74 | Payment | | 1,906.50 | |
| | Cash Discount | | 38.90 | 2,193.32 |
| 12–6–74 | Invoice #68092 | 781.20 | | 2,974.52 |
| 12–6–74 | Cr Memo #45607 | | 423.16 | 2,551.36 |

| Date | Item | Charges | Credits | Balance |
|---|---|---|---|---|
| 12–9–74 | Payment | | 1,476.49 | |
| | Cash Discount | | 30.13 | 1,044.74 |
| 12–12–74 | Cr Memo #45615 | | 152.60 | 892.14 |
| 12–12–74 | Invoice #68163 | 1,199.04 | | 2,091.18 |
| 12–16–74 | Payment | | 862.79 | |
| | Cash Discount | | 29.35 | 1,199.04 |
| 12–18–74 | Invoice #68218 | 1,057.90 | | 2,256.94 |
| 12–23–74 | Invoice #68263 | 788.19 | | 3,045.13 |
| 12–27–74 | Invoice #68316 | 800.88 | | 3,846.01 |
| 12–27–74 | Cr Memo #45849 | | 166.88 | 3,679.13 |
| 1–3–75 | Invoice #68374 | 1,034.16 | | 4,713.29 |
| 1–8–75 | Invoice #68434 | 1,045.28 | | 5,758.57 |
| 1–13–75 | Invoice #68497 | 977.17 | | 6,735.74 |
| 1–17–75 | Invoice #68555 | 875.77 | | 7,611.51 |
| 1–20–75 | Invoice #68572 | 589.40 | | 8,200.91 |
| 1–24–75 | Invoice #68630 | 978.67 | | 9,179.58 |
| 1–27–75 | Invoice #68652 | 705.51 | | 9,885.09 |
| 1–29–75 | Payment | | 2,256.94 | 7,628.15 |
| 1–31–75 | Invoice #68719 | 926.57 | | 8,554.72 |
| 2–27–75 | Payment | | 3,000.00 | 5,554.72 |
| 3–31–75 | Payment | | 250.00 | 5,304.72 |
| 4–21–75 | Invoice #69846 | 523.18 | | 5,827.90 |
| 4–23–75 | Payment | | 773.18 | 5,054.72 |
| 4–25–75 | Invoice #59599 | 843.05 | | 5,897.77 |
| 4–28–75 | Payment | | 843.05 | 5,054.72 |
| 5–2–75 | Invoice #69979 | 1,045.28 | | 6,100.00 |
| 5–6–75 | Payment | | 1,295.28 | 4,804.72 |
| 5–9–75 | Invoice #76455 | 950.80 | | 5,755.52 |
| 5–12–75 | Payment | | 1,200.80 | 4,554.72 |

Again, the invoices attached to the amended petition were only the last six listed on the statement, being the same invoices attached to plaintiff's original pleadings.

When the case was called for trial on February 22, 1977, plaintiff's counsel conceded the merit of an exception made by defendant attacking the validity of the affidavit attached to plaintiff's amended petition; admitted that "we do not now have a verified account"; and stated to the court that he would proceed on "a quantum meruit basis . . . and not under Rule 185." The case proceeded on that basis.

Defendant's plea of the two-year statute of limitation, Article 5526, Vernon's Tex. Civ.St., was made to all transactions and charges shown on the statement of account attached to plaintiff's amended petition which were not shown on the statement of account attached to the original petition. As we have said, the court sustained the plea. Plaintiff contends the ruling was erroneous, and we agree.

The limitation question is controlled by the applicability of Articles 5526 and 5539b, Vernon's Tex.Civ.St. Article 5526 sets forth certain actions which must be brought within two years. It provides in part as follows:

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

"5. Actions upon . . . open accounts . . . In all accounts, . . . limitation shall run against each item from the date of such delivery, unless otherwise specially contracted."

Article 5539b is concerned with limitation as affecting amended and supplemental pleading, and it reads as follows:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."

We agree with defendant's argument that each item on the open account was a separate transaction between the parties, but we believe that plaintiff's original petition embraced the whole account, and that the amended petition was simply an enlargement and amplification of the facts of the account originally sued upon. In both pleadings, plaintiff sought the same balance due on the account of $4,554.72. To reach this balance as pleaded originally and by amendment required the application of all payments made by defendant to the oldest transactions, a procedure contested by defendant. It was plaintiff's application of the payments in that fashion which brought forward the "partial balance" of $265.84 on invoice # 68652 as sued on in the original petition. If the case had gone to contested trial on plaintiff's original petition, plaintiff would have been required to prove the account exactly as itemized in its amended pleading in order to establish its right to recover the alleged balance of $4,554.72. Accordingly, we hold that all the transactions itemized in the amendment were necessarily sued upon originally; and that under the provisions of Article 5539b the two-year limitation prescribed by Article 5526 was improperly applied by the trial court to those items of the account not shown in the original pleading. See *First*

*State Bank & Trust Co. v. Ramirez*, 133 Tex. 178, 126 S.W.2d 16 (1939); *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.1967); *Browning v. El Paso Lumber Co.*, 140 S.W. 386 (Tex.Civ.App.—El Paso 1911, no writ). Because none of the account was barred by limitation, the proof in plaintiff's bill of exception relating to all the transactions was properly before the court for consideration.

### Designated Payment Credit

It is the settled rule that where there is a running account with various items of charges and credits occurring at different times, and no direction of payment has been made by the debtor, payments on the account as a whole are applied by law to the oldest unpaid portion of the account. *Prowell v. Berry-Barnett Grocery Company*, 462 S.W.2d 53, 54 (Tex.Civ.App. —Waco 1971, writ ref'd). The rule applies even if the oldest part of the account is barred by limitation when an undesignated payment is made by the debtor. *Pyle v. Byrne*, 331 S.W.2d 507, 509 (Tex.Civ.App.— Texarkana 1960, writ ref'd n. r. e.); *Morgan v. Morgan*, 406 S.W.2d 347, 350 (Tex.Civ. App.—San Antonio 1966, no writ). On the other hand, if the parties have agreed that a payment shall be applied to a certain indebtedness, or if the debtor has directed such application, then the agreement or direction is controlling. 44 Tex.Jur.2d 687 et seq., Payment, §§ 33, 36.

In our case the record shows that in February or March, 1975, when defendant was in arrears on his account, plaintiff refused to make future shipments of feed to defendant unless, at the time of delivery, defendant paid plaintiff in cash a sum equal to the charge for the feed delivered plus an additional $250.00 "overage." Defendant met that requirement on the last four transactions shown on the statement of account, ante, in April and May, 1975 (evidenced by invoices # 69846, # 59599, # 69979, and # 76455) with the exception of the payment he made at the time of the delivery on April 25th (invoice # 59599)

which did not include the additional $250.00 overage. Plaintiff applied all those payments, including the amount representing the charge for the feed delivered, as general payments to defendant's account. The trial court found that the agreement of the parties was that those deliveries were made on a "cash sale" basis, with only the overages to be applied to the delinquent account. That finding is supported by the testimony of defendant, who stated that the agreement was this: "They would bring the feed out, but I would pay cash [for the feed delivered] plus two hundred and fifty dollars overage on my account. If I wasn't there to pay the driver I would not get the feed delivered. They would not deliver feed on account. Any future deliveries received would be on a cash basis, and would be paid for in full when delivered—before the truck unloaded." Plaintiff's Field Manager who made the arrangement with defendant for cash payment on future deliveries denied defendant's testimony that the agreement was for cash sales on delivery, but his testimony only raised a fact question which was resolved by the trial court as trier of the facts in defendant's favor.

Granted the benefit of the court's determination that the last four transactions were paid for on delivery, inasmuch as none of the account was barred by limitation defendant still owed the balance of $4554.72 principal on the account when this suit was filed.

### Usury

The usury statutes in focus in this case are Articles 5069–1.03 and 5069–1.06, Vernon's Tex.Civ.St. Article 5069–1.03 provides:

> "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on . . . all open accounts, from the first day of January after the same are made."

Article 5069–1.06 provides penalties as follows:

> "(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

> "(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; . . . ."

The terms of all sales made by plaintiff to defendant on the account in question were "2% 10 days, net 30 days." That is, plaintiff would discount two percent of the charge for each delivery for payment within ten days of delivery; and the charge became delinquent if not paid within 30 days. An invoice prepared by plaintiff reflecting those terms was delivered to defendant on each shipment. Additionally, each invoice contained the following language printed on its face: "Above charges subject to a delinquency charge of one percent per month on past due balances." At the end of each month, plaintiff mailed defendant a statement of the account reflecting the status of the account at that time.

Plaintiff began assessing delinquency charges on past due charges to the account in February 1975, and continued doing so through May, 1975. Additionally, beginning in March, plaintiff assessed the delinquency charge to the unpaid delinquency charges added to the account during the prior month. All delinquency charges were added to the account as principal, and were shown as such on the monthly statements sent to defendant. At the end of each month plaintiff mailed defendant an invoice showing the delinquency charges applied to his account during the month. The invoices show the following delinquency charges made:

Invoice No. 00020 dated 2–28–75 (Terms "Net 10 Days")

"DELINQUENCY CHARGE

| TRANSACTION | DATE | AMOUNT | CHARGE FOR | AMT. |
|---|---|---|---|---|
| INV. 68434 | 1–08–75 | 501.63 | 20 DAYS | 3.34 |
| INV. 64897 | 1–13–75 | 977.17 | 15 DAYS | 4.88 |
| INV. 68555 | 1–17–75 | 875.77 | 11 DAYS | 3.21 |
| INV. 68572 | 1–20–75 | 589.40 | 8 DAYS | 1.57 |
| INV. 68630 | 1–24–75 | 978.67 | 4 DAYS | 1.30 |
| INV. 68652 | 1–27–75 | 705.51 | 1 DAY | .23 |
| | | | TOTAL | 14.53" |

Invoice No. 00188 dated 3–31–75 (Terms "Net 10 Days")

"DELINQUENCY CHARGE

| TRANSACTION | DATE | AMOUNT | CHARGE FOR | AMT. |
|---|---|---|---|---|
| INV. 00020 | 2–28–75 | 14.53 | 20 DAYS | .09 |
| INV. 68434 | 1–08–75 | 251.63 | 1 MO | 2.51 |
| INV. 68497 | 1–13–75 | 977.17 | 1 MO | 9.77 |
| INV. 68555 | 1–17–75 | 875.77 | 1 MO | 8.75 |
| INV. 68572 | 1–20–75 | 589.40 | 1 MO | 5.89 |
| INV. 68630 | 1–24–75 | 978.67 | 1 MO | 9.78 |
| INV. 68652 | 1–27–75 | 705.51 | 1 MO | 7.05 |
| INV. 68719 | 1–31–75 | 926.57 | 28 DAYS | 8.64 |
| | | | TOTAL | 52.48" |

Invoice No. 00349 dated 4–30–75 (Terms "Net 10 Days")

"DELINQUENCY CHARGE

| TRANSACTION | DATE | AMOUNT | CHARGE FOR | AMT. |
|---|---|---|---|---|
| INV. 00020 | 2–28–75 | 14.53 | 1 MO | .14 |
| INV. 00188 | 3–31–75 | 52.48 | 19 DAYS | .33 |
| INV. 68555 | 1–17–75 | 488.34 | 1 MO | 4.88 |
| INV. 68572 | 1–20–75 | 589.40 | 1 MO | 5.89 |
| INV. 68630 | 1–24–75 | 978.67 | 1 MO | 9.78 |
| INV. 68652 | 1–27–75 | 705.51 | 1 MO | 7.05 |
| INV. 68719 | 1–31–75 | 926.57 | 1 MO | 9.26 |
| | | | TOTAL | 37.33" |

Invoice No. 00459 dated 5–31–75 (Terms "Net 10 Days")

"DELINQUENCY CHARGE

| TRANSACTION | DATE | AMOUNT | CHARGE FOR | AMT. |
|---|---|---|---|---|
| INV. 00020 | 2–28–75 | 14.53 | 1 MO | .14 |
| INV. 00188 | 3–31–75 | 52.48 | 1 MO | .52 |
| INV. 00349 | 4–30–75 | 37.33 | 20 DAYS | .24 |
| INV. 59599 | 4–25–75 | 843.05 | 5 DAYS | 1.40 |
| INV. 68652 | 1–27–75 | 265.84 | 1 MO | 2.65 |
| INV. 68719 | 1–31–75 | 926.57 | 1 MO | 9.26 |
| INV. 69846 | 4–21–75 | 523.18 | 9 DAYS | 1.56 |
| | | | TOTAL | 15.77" |

The term "interest" is defined in Article 5069–1.01 as "the compensation allowed by law for the use or forbearance or detention of money"; and "usury" is defined in that statute as "interest in excess of the amount allowed by law." The delinquency charges assessed by plaintiff were interest within the meaning of the statute. *Parks v. Lubbock,* 92 Tex. 635, 51 S.W. 322, 323 (1899); *Windhorst v. Adcock Pipe And Supply,* 547 S.W.2d 260 (Tex.Sup. 1977).

Defendant testified that he did not agree to pay interest on the account, and there is no evidence that he did agree to do so.

As shown on the statement of account, defendant's account with plaintiff began in November, 1974. Under Article 5069–1.03, supra, plaintiff would have been entitled to charge interest at the rate of six percent per annum beginning January 1, 1975, on the sum $3,679.13, which was then delinquent on the account. That sum was the total of transactions evidenced by invoices # 68163, # 68218, # 68263, and # 68316, less credit memo # 45849. Therefore, during January, 1975, plaintiff could have charged interest on the delinquent account in the amount $25.51, although it did not do so. On January 29th, transactions # 68163 and # 68218, totaling $2,256.94, were paid by defendant as is evidenced by the payment credit in that amount shown on the statement. Therefore, during February, 1975, plaintiff could have charged interest on the account in the amount $7.11 on the delinquent sum $1,422.19. However, after the $3,000.00 payment credited to the account on February 27th, there was no delinquency against which interest could have been charged by plaintiff. Accordingly, the interest charges actually made by plaintiff in 1975 on balances accruing in 1975 were prematurely made, and in violation of Article 5069 -1.03. They were usurious.

Additionally, the invoices set forth above show that the interest actually assessed by plaintiff on defendant's account was calculated at the rate of one percent per month compounded, on all charges to the account which were 30 days or more past due. Plaintiff's Administrative Manager admitted that was the method of calculation. This rate was in excess of double the amount of six percent per annum allowed on open accounts under Article 5069–1.03; and although none of the interest was ever paid by defendant and none of it was sued for by plaintiff, the charging of it triggered the penalties set forth in Article 5069–1.06, supra. *Windhorst v. Adcock Pipe And Supply,* 547 S.W.2d 260, 261 (Tex. Sup.1977).

Excluding the charges to the account paid upon receipt of shipments by defendant, the evidence still shows that the principal balance of $4,554.72 sued for by plaintiff is made up of charges against which plaintiff charged interest in excess of twelve percent per annum. Accordingly, under the provisions of Article 5069–1.06, plaintiff must forfeit the principal amount of its account, plus the interest charged to the account in the sum $120.11, and defendant is entitled to recover twice the amount of interest charged plus reasonable attorney's fees for prosecuting his usury claim. *Lafferty v. A.E.M. Developers And Builders Co.,* 483 S.W.2d 279, 282 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.).

The remaining points and contentions of the parties are overruled.

Under our holdings plaintiff is not entitled to any recovery by this suit, and defendant is entitled to recover $240.22 plus an amount for reasonable attorney's fees. Because the trial court denied defendant's usury claim, it did not make a finding in his favor on attorney's fees although he tendered proof on the question.

The judgment is reversed, and the case is remanded to permit the court to determine the amount to be awarded to defendant for his attorney's fees, and to then render judgment in accordance with our rulings.

Reversed and remanded.

JAMES, Justice, dissenting.

I respectfully dissent. I agree with the majority in that it is my opinion that the

two-year statute of limitation does not apply. However, I disagree with the majority on the usury question. The majority holding is in effect this: That since the Plaintiff assessed delinquency charges against Defendant from February 1975 through May 1975 at the rate of one percent per month compounded monthly (after 30 days) for a total interest charge of $120.11, that the entire debt was tainted with double the amount of interest allowed by law under the provisions of Article 5069–1.06(2), calling for forfeiture of all principal plus reasonable attorney's fees. I respectfully submit that such a disposition is not proper under the facts of this case.

Under Article 5069–1.03, Plaintiff was entitled to charge this account at the rate of six percent per annum from the first day of January after the deliveries of merchandise were made. This has been held to mean that such interest is chargeable from the first of the year after an account is *made,* regardless of the date on which it became due. *Browning v. El Paso Lumber Co.* (CCA 1911) 140 S.W. 386, no writ; *Erb-Springall Co. v. Pittsburg Plate Glass Co.* (CCA 1907) 101 S.W. 1165, no writ; 1 Tex. Jur.2d, "Accounts and Accounting," par. 90, p. 340. Also see *Tri-State Tire Service, Inc. v. Gates Rubber Co.* (5th Cir. 1964) 339 F.2d 573.

Let us compute the amount of interest which Plaintiff had the right to charge the Defendant on this account under Article 5069–1.03 from its beginning down to November 22, 1977, the date of the trial court's judgment:

(1) On January 1, 1975, the Defendant's principal balance was $3679.13, and his principal balance never fell below this amount during the year 1975. As we understand the above statute, from January 1, 1975, through December 31, 1975, Plaintiff was legally entitled to charge interest at 6% per annum for the year 1975 of $226.74.

(2) On January 1, 1976, the Defendant's principal balance was $4554.72 and his balance never fell below this amount in 1976. From this date through December 31, 1976, interest at six percent amounts to $273.28.

(3) On January 1, 1977, the Defendant's principal balance was still $4554.72. His balance never fell below this amount thereafter. From January 1, 1977, to November 22, 1977 (date of the trial court's judgment), interest at six percent per annum amounts to $265.65.

In short, the Plaintiff was legally entitled to charge the Defendant under Article 5069–1.03 interest in the total amount of $759.67.

Although the Plaintiff sued for no interest, he did charge the Defendant with $120.11 interest. Where the Plaintiff is entitled to charge interest in the amount of $759.67, but only charges $120.11 interest, I cannot see how we can say that the Defendant has been charged usurious interest. Indeed, the Defendant has actually been charged $639.56 less interest than he is liable for under Article 5069–1.03.

In my opinion, we should consider the account as a whole, particularly since Plaintiff's suit is founded on quantum meruit, and determine first how much interest the Plaintiff was entitled to charge, and see whether he charged more than the proper charge, or less. Here, the Plaintiff charged $639.56 less than he was lawfully entitled to charge. Therefore, in my opinion, usury is not in the case.

I would reform the trial court's judgment by allowing the Plaintiff a net recovery of $4554.72 instead of the $1192.41 allowed by the trial court, and in all other respects I would affirm the trial court's judgment.