**FLATO ELECTRIC SUPPLY CO., Appellant,**

v.

**Shane GRANT, d/b/a U. S. Electric Co., Appellee.**

No. 1722.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 20, 1981.

Rehearing Denied Sept. 17, 1981.

Frederick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, for appellant.

C. M. Henkel, III, Corpus Christi, for appellee.

OPINION

YOUNG, Justice.

The central issue in this case is whether a service charge of 1½% per month imposed by the seller upon the unpaid balance of the business account of a purchaser was interest. The service charge was assessed in connection with the purchase of electrical supplies and equipment by Shane Grant, d/b/a U. S. Electric Company, from Flato Electric Supply Company. In the trial court Grant was plaintiff and cross-defendant; Flato was defendant and cross-plaintiff.

After a non-jury trial, the trial court found that the assessment of the service charge violated Article 5069–1.03,[1] which sets a maximum interest rate of 6% on an open account when there is no agreement between the parties providing for a specified rate of interest. Therefore, in accordance with Article 5069–1.06(2), the trial court rendered judgment in favor of Grant for twice the interest charged, forfeiture of all principal and interest charged, attorneys fees, interest, and costs. Findings of fact and conclusions of law were filed. Flato appeals. We affirm in part.

A review of the pertinent facts of the transactions between the parties reflects the following. Appellee Grant was an electrical contractor who established an open account with appellant, a wholesale electrical supply house. There is conflicting evidence whether an agreement was entered into by the parties controlling the payment of interest. Appellee contends that appellant never discussed the imposition of a service charge on the account, while the appellant argues that the appellee was given a copy of a document referred to as "Terms and Condition of Sales." This document, according to the appellant, embodies the agreement between the parties. In pertinent part, it states:

"*Terms of Payment*
The cash discount as indicated on invoices and statement will be allowed if remittance is postmarked on or before the 10th of the month following invoice date. Invoices not discounted become due net the 11th of the month following invoice date and past due on the last day of the month following invoice date. A service charge of 1½% per month will be added to your account on all past due invoices on the last day of the month following invoice date and at the end of each month until the past due portion of your account is paid."

Appellee denies ever receiving or discussing such a document.

Appellee first purchased supplies on the account on July 25, 1977, and continued doing so until April 3, 1979. During this period, approximately two hundred charges were made on the account. Service charges were imposed six times: August 30, 1978; September 28, 1978; October 30, 1978; February 27, 1979; March 28, 1979; April 30, 1979. It is undisputed that a service charge of 1½% per month was assessed on appellee's account on these dates and for a total of $502.50.

Appellee brought this cause of action, alleging that the appellant charged interest at a rate more than double that permitted under Article 5069–1.01 et seq. As a penalty for the violation, appellee urged the trial court to award twice the amount of interest charged plus a forfeiture of all principal and interest charged, including that previously paid and currently owed by the appellee. Appellant filed a cross-action on a sworn account in the amount of $6371.90, alleged to be the unpaid principal and interest balance on the account. Judgment was entered in favor of the appellee for twice the interest charged on the open account ($1,005.00), forfeiture of all principal previously paid ($53,152.79), and for forfeiture of the remaining principal balance and service charge assessed by the appellant ($6371.00).

The first eight points of error brought by appellant essentially challenge the findings of fact and conclusions of law filed by the trial court. In summary, the trial court found that: 1) the appellee's account with the appellant was an open account with no written agreement controlling the rate of interest charged the appellee; 2) that the appellant charged the appellee a service charge of 1½% on the unpaid balance, which was interest and not time-price differential; 3) that such interest was charged prior to January 1 of each year after the account was made; and 4) that the appellant intentionally charged such usurious interest. The court concluded that the rate of interest charged by the appellant was in excess

---

1. All statutory references are to Texas Revised Civil Statutes Annotated (1967) unless otherwise noted. Amendments to art. 5069–1.06 became effective on August 27, 1979, some three months after this lawsuit was commenced on May 29, 1979.

of double the 6% interest permitted under Article 5069–1.01 et seq.

■ In reviewing a judgment in which findings of fact have been filed by the trial court, those findings of fact are controlling upon this Court if there is some evidence of substantial and probative character to support them. *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 609 (Tex.1979); *Commercial Union Assurance Co. v. Foster*, 379 S.W.2d 320 (Tex.1964); *Hagar v. Williams*, 593 S.W.2d 783 (Tex.Civ.App.—Amarillo 1979, no writ); *Hi Fashion Wigs Profit Sharing Trust v. Hamilton Investment Trust*, 579 S.W.2d 300, 303 (Tex.Civ.App.—Eastland 1979, no writ). The mere fact that the trial court could have drawn inferences or conclusions different than those found is not cause to set aside the judgment. *Dyer v. Caldcleugh & Powers*, 392 S.W.2d 523, 532 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.).

■ About the finding by the trial court that the "service charge" assessed on the account was interest and not time-price differential, there is substantial evidence to support such a holding. The assessment of a service charge on an open account clearly falls within the definition of interest set out by the Legislature.

"(a) 'Interest' is the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time price differential however denominated arising out of a credit sale." Article 5069–1.01(a).

The use of time-price differential occurs in retail installment contracts which are structured to exact a fixed sum over a definite period of time. Article 5069–7.01(i) (1978); see *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n. r. e.). Such is not the situation in the standard open account which has no fixed time period.

■ It is established law that a service charge assessed by a party on an open account is interest within the meaning of this statutory definition. *Houston Sash &*

*Door Co., Inc. v. Heaner*, 577 S.W.2d 217 (Tex.1979); *Windhorst v. Adcock Pipe & Supply*, 547 S.W.2d 260 (Tex.1977); *El Paso Environmental Systems, Inc. v. Filtronics, Inc.*, 609 S.W.2d 810 (Tex.Civ.App.—El Paso 1980, writ ref'd n. r. e.); *Watson v. Cargill, Inc., Nutrena Division*, 573 S.W.2d 35 (Tex. Civ.App.—Waco 1978, writ ref'd n. r. e.); *Thomas Conveyor Co., Inc. v. Portec, Inc.*, 572 S.W.2d 361 (Tex.Civ.App.—Waco 1978, no writ); *Killebrew v. Bartlett*, 568 S.W.2d 915 (Tex.Civ.App.—Amarillo 1978, no writ). The provisions of Article 5069–1.01 et seq. are therefore controlling since imposition of the service charge amounts to the charging of interest. *Hagar v. Williams*, supra.

■ About the complained of finding by the trial court that no agreement existed between the parties, the trial court specifically found that no agreement existed between the parties, either oral or written. Such a finding is not against the great weight and preponderance of the evidence, and we shall not substitute our judgment for that of the trial court. See *Watson v. Cargill, Inc., Nutrena Division*, supra at 42; *Morsch v. Metzger*, 520 S.W.2d 564, 569 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); cf. *Preston Farm, Etc. v. Bio-Zyme Enterprises*, 615 S.W.2d 258 (Tex. Civ.App.—Dallas 1981, writ filed).

Since no specified rate of interest was agreed upon by the parties, the maximum rate of interest that appellant could have charged on the open account was 6%, to begin on the first day of January in the year after the account was made. Article 5069–1.03. It is unassailable that the interest charged was more than double the amount permissible (6%) under this statute. *Hagar v. Williams*, supra at 789. The trial court also found that the appellant imposed the service charge in the year in which the account was made. *Houston Sash & Door Co., Inc. v. Heaner*, supra; *Wall v. East Texas Teachers Credit Union*, 533 S.W.2d 918 (Tex.1976). All of appellant's points are overruled.

■ The amount of penalties assessed by the trial court is correct except for the forfeiture of the principal paid in 1977

($3,776.57). No interest was charged in 1977, so forfeiture of the principal paid in 1977 was improper. That part of the judgment ordering forfeiture of the principal of $3,776.57 paid by the appellee in 1977 is reversed and here rendered that appellee take nothing from appellant regarding that amount. In all other respects, the judgment of the trial court is affirmed. Rule 435, T.R.C.P.

Reversed in part and affirmed in part.