CONCRETE CONSTRUCTION
SUPPLY, INC., Appellant,

v.

M. F. C., INC., Appellee.

No. 20958.

Court of Appeals of Texas,
Dallas.

May 21, 1982.

Kenneth A. Herridge, May, Herridge & McRae, Dallas, for appellant.

Robert F. Henderson, Allen, Knuths & Cassell, Dallas, for appellee.

Before AKIN, SPARLING and FISH, JJ.

FISH, Justice.

In this usury case, suit was brought by Concrete Construction Supply, Inc., a supplier, to recover for materials sold on open account to M.F.C., Inc., a contractor. A short time later, M.F.C. instituted suit against Concrete to obtain usury penalties for interest charges on the same account. The two suits were consolidated for a non-jury trial. Judgment was rendered in favor of M.F.C. for $4,533.96 (three times the amount of usurious interest charged), plus attorney's fees of $4000 for services in the trial court and additional amounts in the event of an appeal. The judgment also forfeited all principal, interest and other charges on Concrete's open account in the amount of $10,593.60. We agree with the court's assessment of penalties, but modify the judgment by limiting the recovery to the amount prayed for by M.F.C.

In considering the seven points of error advanced by Concrete, we must decide (1) whether, under the facts of this case, M.F.C. was an obligor; (2) whether federal law has pre-empted the Texas law of usury that would otherwise control this case; (3) what difference there is, if any, between the amount of interest Concrete charged and the amount of interest allowed by law; and (4) whether M.F.C.'s recovery is limited to the amount prayed for in its pleadings. After determination of these issues, all of Concrete's other contentions are resolved by formulas set out in the applicable usury laws.

## I. WAS M.F.C. AN OBLIGOR?

In its first point of error Concrete contends that M.F.C. could not have been an obligor entitled to recover usury penalties because M.F.C. denied owing any debt to

Concrete on the open account. Article 5069–1.06(1) of the Texas Revised Civil Statutes provides that:

"[A]ny person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the *obligor* three times the amount of usurious interest contracted for, charged or received. . . ." (Vernon Supp. 1982) [emphasis added].

To recover under this statute, M.F.C. had to show that it was an obligor of Concrete. *Patterson v. Neel*, 610 S.W.2d 154, 156 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ).

■■■ So long as one is an immediate party to the transaction, *see Childs v. Taylor Cotton Oil Co.*, 612 S.W.2d 245, 251 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.), and there is a binding obligation existing between those immediate parties, an obligor is a person who pays, is charged, or has contracted to pay interest at a rate in excess of that allowed by law. *Patterson v. Neel, supra*, at 156. There is no doubt that M.F.C. was an immediate party to the transaction or that M.F.C. was "charged" interest.[1] Our question, then, is whether there was a binding obligation between the parties. Concrete contends that the following testimony by one of M.F.C.'s corporate officers conclusively established that there was no binding obligation:

> ANSWER: Well, on two particular jobs when I was purchasing from Concrete Construction Supply at the time we had an agreement with the sales manager then that we would not have to pay them until we had received our money from the owners of the jobs at that time and the two particular jobs stick out in my mind.
>
> \* \* \* \* \* \*
>
> ANSWER: We had a financial arrangement and all of the jobs that we didn't pay until we had received our money, but he expected me to pay the day that I received my funds, and that practice was basically followed throughout our business relationship.
>
> QUESTION: Has that been true on every job that Concrete Construction supplied materials?
>
> ANSWER: As far as I know, it has.
>
> \* \* \* \* \* \*
>
> QUESTION: So you did not consider MFC even indebted to Concrete Construction Supply until you received your money on a job, is that right?
>
> ANSWER: I am not obligated to pay them until I receive my money on a job.
>
> QUESTION: And when did this arrangement begin? When was the first time this happened?
>
> ANSWER: Probably when we started doing business.
>
> \* \* \* \* \* \*
>
> QUESTION: So, as far as you were concerned, if you did not collect any money from them, you would not have to pay Concrete Construction Supply, is that correct?
>
> ANSWER: That is correct.

Notwithstanding this testimony, it was stipulated in open court, and thereby judicially admitted, that

> "the Plaintiff, MFC, Inc. purchased goods from Concrete Construction Supply on an open account . . . [and] that the net amount due under Concrete Constructions Supply's statement of account to MFC, Inc. of September 24, 1980, in the principal amount owing for the cumulative invoices on that statement was $8,684.98."

A fact judicially admitted does not require evidence; rather, it is established conclusively as a matter of law and precludes the

---

1. Charging is the unilateral act of placing something to the account of as a debt; to debit, as, to charge a sum to one. *See Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260 (Tex. 1977). The charge can be a debiting of an amount due or more certainly by an act by the promisee constituting or implying a demand for payment, e.g., the inclusion in a statement of indebtedness submitted to the debtor. *Rheiner v. Varner*, 627 S.W.2d 459, 465 (Tex.Civ.App.—Tyler 1981, no writ). *Hagar v. Williams*, 593 S.W.2d 783, 788–789 (Tex.Civ.App.—Amarillo 1979, no writ); *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex.Civ. App.—Austin 1975, writ ref'd n. r. e.).

trial court from finding any facts to the contrary. *See Gevinson v. Manhattan Construction Co. of Okl.*, 449 S.W.2d 458, 466 (Tex.1969); *Hagar v. Williams*, 593 S.W.2d 783, 787 (Tex.Civ.App.—Amarillo 1979, no writ); 1A Ray, Texas Practice, Law of Evidence § 1127 (3rd ed. 1980). Consequently, the stipulation that a sum was due and owing constituted M.F.C. an obligor as a matter of law.

## II. IS M.F.C.'S USURY CLAIM PRE-EMPTED BY FEDERAL LAW?

In its sixth point of error, Concrete maintains that article 5069–1.03 of the Texas Revised Civil Statutes has been pre-empted in this case by Title 12, United States Code § 86(a).[2] Concrete reasons that because M.F.C.'s open account had not been paid in full, all transactions in the account, dating back to its inception on July 31, 1978 and continuing to the last transaction on July 26, 1979, have been pre-empted by this federal statute. We do not agree. Without deciding what effect this statute might have had on those transactions if they had occurred after April 1, 1980 (the effective date of the statute), we hold that, because each item on the open account was a separate transaction between the parties,

2. § 86a. Interest on business and agricultural loans of $1,000 or more-Discount rate on ninety-day commercial paper

(a) If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, such person may in the case of a business or agricultural loan in the amount of $1,000 or more, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located.

Definitions

(b) For the purpose of this section—

(1) the term "loan" includes all secured and unsecured loans, credit sales, forbearances, advances, renewals or other extensions of credit made by or to any person or organization for business or agricultural purposes;

(2) the term "interest" includes any compensation, however denominated, for a loan;

(3) the term "organization" means a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, association, or other entity; and

(4) the term "person" means a natural person or organization.

Forfeiture of excessive interest; recovery

(c) If the rate prescribed in subsection (a) of this section exceeds the rate such person would be permitted to charge in the absence of this section, and such State imposed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the loan carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of interest paid from the person taking, receiving, reserving, or charging such interest.

SEC. 512. (a) The provisions of this part [this section] shall apply only with respect to business or agricultural loans in amounts of $1,000 or more *made in any State during the period beginning on April 1, 1980....* except that such provisions shall apply to any loan made on or after such earlier date pursuant to a commitment to make such loan which was entered into on or after April 1, 1980, and prior to such earlier date.

"(b) A loan shall be deemed to be made during the period described in subsection (a) if such loan—

"(1)(A) is funded or made in whole or in part during such period, regardless of whether pursuant to a commitment or other agreement therefor made prior to April 1, 1980;

"(B) was made prior to or on April 1, 1980, and bears or provides for interest during such period on the outstanding amount thereof at a variable or fluctuating rate; or

"(C) is a renewal, extension, or other modification during such period of any loan, if such renewal, extension or other modification is made with the written consent of any person obligated to repay such loan; and

"(2)(A) is an original principal amount of $25,000 or more $1,000 or more on or after the date of enactment of the Housing and Community Development Act of 1980); or

"(B) is part of a series of advances if the aggregate of all sums advanced or agreed or contemplated to be advanced pursuant to a commitment or other agreement therefor is $25,000 or more ($1,000 or more on or after the date of enactment of the Housing and Community Development Act of 1980)."

(2) The amendments made by paragraph (a) take effect on April 1, 1980. [Emphasis added].

*Watson v. Cargill, Inc., Nutrena Division,* 573 S.W.2d 35, 39 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.), and because all of M.F.C.'s obligations on the open account were incurred before April 1, 1980, the transactions in this case are governed by article 5069–1.03.

This conclusion is compelled by the very language of the preemption statute. In defining the period to be covered by the preemption, Congress chose to include certain obligations incurred prior to April 1, 1980, but none of those obligations are involved in the present case. *See* Sec. 512(b). Because M.F.C.'s obligations were all incurred under state law prior to April 1, 1980, we overrule Concrete's sixth point of error.

## III. WHAT IS THE DIFFERENCE BETWEEN THE AMOUNT OF INTEREST CHARGED AND THE AMOUNT OF INTEREST ALLOWED BY LAW?

Concrete's third point urges that the trial court erred in ordering forfeiture of all principal and other charges on the open account. The usury statute, art. 5069–1.-06(2), authorizes such a penalty only when the interest charged exceeds twice the interest allowed by law, and Concrete argues that the trial court should have found the charges of interest here did not exceed that threshold. To decide this point, we must compare the amount of interest Concrete charged M.F.C. with the amount the law allowed Concrete to charge. *See Houston Sash and Door Co., Inc. v. Heaner,* 577 S.W.2d 217, 221 (Tex.1979); *Hagar v. Williams, supra,* at 787–88.

### What Amount Of Interest Did Concrete Charge?

The record reveals that Concrete first charged interest on the account by sending to M.F.C. invoice 35126 and a letter dated September 15, 1979. Omitting salutation and signature, the letter states:

Attached is invoice no. 35126 covering past due charges on the following invoices:

| CHARGED DURING: | | MONTHS PAST DUE: | RATE: | AMOUNT: |
|---|---|---|---|---|
| MARCH | $2503.31 | 4 | 6 % | $150.20 |
| APRIL | 3796.46 | 3 | 4½% | 770.84 [sic] |
| MAY | 2358.43 | 2 | 3 % | 70.75 |
| JUNE | 26.78 | 1 | 1½% | .40 |
| JULY | 119.99 | | | |
| | | Total Amount Due | | $392.19 |

Invoice 35126, referred to in this letter, billed M.F.C. for the amount of $392.19 as "a special charge to charge interest on past due balances per attached." Concrete added the amount shown on this invoice to the account and included it in all statements rendered to M.F.C. after November 30, 1979. In addition, beginning with the statement dated November 30, 1979, Concrete included a further charge of $136.40 with the description "Our S/C." A like amount was added as a "current charge" on each subsequent statement through the last one dated September 24, 1980. In the eleven statements from November, 1979 through September 1980, Concrete made eleven monthly charges of $136.40, plus the September, 1979 charge of $392.19, for a total of $1,892.59. The trial court found in its judgment that, as of the date of the September, 1980 statement, Concrete charged M.F.C. interest on its open account in the amount of $1,892.59.

### What Amount of Interest Was Allowed by Law?

The trial court found in its judgment that the amount of interest Concrete was al-

**480**

lowed to collect by law was $381.27.[3] We have been unable to determine how the trial court computed that figure, which Concrete challenges as unsupported in the evidence.

■ It was established at trial that M.F.C. never agreed to pay interest on its open account with Concrete. Consequently, an obligation to pay interest at the rate of 6% per annum arose by implication of law under article 5069–1.03. *Preston Farm & Ranch Supply v. Bio-Zyme Ent.*, 625 S.W.2d 295, 297 (Tex.1981); *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260, 261 n.2 (Tex.1977). At the time these transactions took place, that statute provided in pertinent part:

> "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed ... on all open accounts, from the first day of January after the same are made."

Art. 5069–1.03, Tex.Rev.Civ.Stat.Ann. (Vernon 1971).

Concrete contends that the amount of interest allowed by law includes all interest it *could* have charged, but did not, from the beginning of its open account with M.F.C. until the date of trial, February 12, 1981. M.F.C. answers that Concrete could not charge interest on those items in the account which were paid before Concrete began charging interest on September 15, 1979.

The single exhibit introduced by Concrete at trial was a tabulation showing, with respect to each invoice, the invoice number, date, amount, date paid, amount paid, number of days past due, and interest at 6% to date paid. According to this document and the testimony of Concrete's witness who explained it, the total interest that Concrete could have charged was $1,279.47, from the inception of its account with M.F.C. to Sep-

tember 11, 1979. Of that total, $936.63 was attributable to invoices dated in 1978 and $342.84 to invoices dated in 1979.

All the interest calculations in this exhibit, as well as the testimony explaining it, are based on an incorrect assumption concerning the amount of interest Concrete was allowed by law to charge. In the exhibit, as interpreted by Concrete's witness, the $1279.47 in interest Concrete claims it could have charged was computed at 6% from the thirty-first day after the date of the invoice until paid. This method of computing interest on open accounts, however, was clearly not permitted by article 5069–1.03 prior to its amendment effective August 27, 1979. *Houston Sash and Door, Inc. v. Heaner, supra,* at 221.

After trial, but before judgment, Concrete requested leave of the trial court to correct its single exhibit to reflect that some invoices dated in 1978 and shown to be paid that same year were not in fact paid until 1979. This relief was granted by the trial court in a written order dated the same day as the judgment. Without this correction, no interest would have been authorized on any invoices dated in 1978, because all such invoices were shown in the original exhibit to have been paid during an "interest free" period, i.e., before interest could begin to accrue, under art. 5069–1.03, on January 1, 1979. *Houston Sash and Door Co., Inc. v. Heaner, supra,* at 221. After the correction, Concrete's exhibit showed 1978 charges outstanding on January 1, 1979 in the total amount of $24,-206.22, which were not paid until May and June of 1979. Concrete asserts on appeal that it was authorized by law to charge interest (6% annually from January 1, 1979 until paid) on the amount of these invoices. We have computed that sum to be $540.13, as shown in the following table:

---

**3.** M.F.C. stated in the petition on which it went to trial that Concrete was authorized by law to charge interest of $667.91. Concrete now maintains that M.F.C.'s allegation was a judicial admission binding on the trial court, while M.F.C. responds that the sum alleged was calculated erroneously by giving the 1979 amendment to article 5069–1.03 retroactive effect. We deem it unnecessary to decide this issue.

| Date of Invoice | Amount of Invoice | 1978 Date Paid | Days Past Due | Rate of Interest | Collectible Interest |
|---|---|---|---|---|---|
| 11–24–78 | $7,415.23 | 5–10–79 | 129 | .0212054 | $157.24 |
| 11–30–78 | 5,233.44 | 5–10–79 | 129 | | 110.98 |
| 12–12–78 | 278.25 | 5–10–79 | 129 | | 5.90 |
| 12–14–78 | 3,535.34 | 6–20–79 | 170 | .0279452 | 98.80 |
| 12–20–78 | 445.20 | 6–20–79 | 170 | | 12.44 |
| 12–27–78 | 417.38 | 5–10–79 | 129 · | .0212054 | 8.85 |
| 12–30–78 | 139.13 | 5–10–79 | 129 | | 2.95 |
| 12–30–78 | 6,742.25 | 5–10–79 | 129 | | 142.97 |
| | | | | Total | 540.13 |

Concrete offered no evidence at trial to show the amount of interest it claimed the law allowed in 1980. From the documents in evidence, we have computed that amount to be $399.81 from January 1 to September 24, 1980, the date of the usurious charging found by the trial court.[4] Thus, the maximum that Concrete could have charged under the terms of article 5069–1.03, as it existed prior to August 27, 1979, was $540.13 for 1979 and $399.81 for 1980 for a total of $939.94. Unless the amendment to article 5069–1.03 applies, the trial court correctly found that Concrete's charge of $1,892.59 was more than twice the amount allowed by law.

We would be reluctant to disturb the trial court's application of the forfeitures in article 5069–1.06(2), even if Concrete's retrospective calculations, never presented to the trial court, had shown that the law authorized it to charge more than half the amount of interest it charged M.F.C. At least three other courts of appeal have considered and rejected arguments similar to that advanced here by Concrete regarding the amount of interest that "might have been charged."

In the first case, *Watson v. Cargill, Inc., Nutrena Division, supra,* the majority of the Waco Court of Appeals stated the evidence of usury as follows:

As shown on the statement of account, defendant's account with plaintiff began in November, 1974. Under Article 5069–1.03, supra, plaintiff would have been entitled to charge interest at the rate of six percent per annum beginning January 1, 1975, on the sum $3,679.13, which was then delinquent on the account. That sum was the total of transactions evidenced by invoices No. 68163, No. 68218, No. 68263, and No. 68316, less credit memo No. 45849. Therefore, during January, 1975, plaintiff could have charged interest on the delinquent account in the amount $25.51, although it did not do so. On January 29th, transactions No. 68163 and No. 68218, totaling $2,256.94, were paid by defendant as is evidenced by the payment credit in that amount shown on the statement. Therefore, during February 1975, plaintiff could have charged interest on the account in the amount $7.11 on the delinquent sum $1,422.19. However, after the $3,000.00 payment credited to the account on February 27th, there was no delinquency against which interest could have been charged by plaintiff. Accordingly, the interest charges actually made by plaintiff in 1975 on balances accruing in 1975 were prema-

4. Before the amendment of art. 5069–1.03 effective August 27, 1979, open accounts were interest free until the following January 1. Thus, all accounts made by M.F.C. in 1979 began to bear interest on January 1, 1980 at 6% per year. From January 1 to September 24, 1980 is 267 days. 6% annual interest for that period produces an interest rate factor of $267/365 \times .06 = .0438904$. The balance of M.F.C.'s accounts on January 1, 1980 was $9,109.39. $9,109.39 \times .0438904 = $399.81.

turely made, and in violation of Article 5069–1.03. They were usurious.

573 S.W.2d at 42.

The dissenting opinion questioned the majority's conclusion that usury had been committed by demonstrating that the creditor could have charged much more in interest over the life of the account than it actually did without violating the usury laws.

In the second case, *Hagar v. Williams, supra,* the Amarillo Court of Appeals reviewed a judgment denying usury penalties. The court gave the following summary of the trial court's findings and conclusions:

> "Williams added the service charges on the dates and in the amounts shown on the statement; the service charges are the same as interest charges; and Williams' subjective intent was not to collect the service charges or interest. The court concluded that Williams had no right to add service charges or interest on the account until 1 January 1978; but, viewing Hagar's defense and right to recover on his counterclaim to be governed by the determination of usury, the court employed the doctrine of spreading interest and *ascertained that the interest charged, when spread over the period of the account, was not usurious . . .*" [emphasis added].

593 S.W.2d at 787. The Court of Appeals disagreed with this approach. It reversed and rendered judgment in favor of the debtor for usury penalties.

Finally, in *Flato Elec. Supply Co. v. Grant,* 620 S.W.2d 915 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.), the trial court awarded the debtor usury penalties of twice the interest charged, forfeiture of all principal and interest charged, attorneys fees, interest, and costs. The creditor there, as in the instant case, charged 1½% per month on the unpaid balance of an open account. The Corpus Christi Court of Appeals affirmed the trial court's judgment in

all respects except forfeiture of interest for 1977. The Court stated that "[n]o interest was charged in 1977, so forfeiture of the principal paid in 1977 was improper." 620 S.W.2d at 918. The apparent rationale for this holding, as well as the holdings in *Watson* and *Hagar,* is that the usury law requires a year by year examination of the account to determine whether the interest charged *in that year* exceeded the amount legally allowable. The Corpus Christi court reasoned that since no interest was charged in 1977, that year could not be considered in determining whether interest charges in other years exceeded the legal limits.

All three of these cases reject the approach urged by Concrete here, viz., that the creditor on an open account can retroactively reconstruct the interest it might have charged, but did not, in years before the usurious act of charging occurred. In two of those, the Supreme Court found no reversible error in denying an application for review. We have discovered no cases approving such a reconstructed calculation. The weight of authority seems clearly contrary to the theory relied on by Concrete for exculpation from the penalties of art. 5069–1.06(2).

### Is the 1979 Amendment of Article 5069–1.03 Applicable?

■ On August 27, 1979, article 5069–1.03 was amended to allow interest on open accounts, in the absence of any agreement to pay interest, at the rate of 6% annually from the 30th day after the date a sum is due.[5] Concrete maintains that, even though all transactions in this suit occurred before August 27, 1979, the fact that a balance was still due in the account on that date authorized it to charge interest in accordance with the amended statute. We do not agree.

■ The terms of article 5069–1.03 are an implied provision in the agreement between the parties and became a part of the

---

**5.** When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum

payable, *commencing on the thirtieth (30th) day from and after the time when the sum is due and payable* [emphasis added].

contract at the time it was made. *See Windhorst v. Adcock Pipe and Supply, supra*, at 261 n.2 ("[w]here there is no agreement upon interest rate, . . . the statutory 6% interest from January 1 following the date the debt is incurred is 'read into' the agreement by Art. 5069–1.03"). Because each item on an open account is a separate transaction between the parties, *Watson v. Cargill, Inc., Nutrena Division, supra*, at 39, article 5069–1.03 was "read into" the parties' agreement at the time of each transaction.

A statute in Texas will not be applied retroactively unless, by fair implication from the language used, it appears that the legislature intended to make it applicable to both past and future transactions. *Merchants Fast Motor Lines v. Railroad Com'n*, 573 S.W.2d 502, 504 (Tex.1978). There is nothing in the language of the 1979 amendment to article 5069–1.03 which plainly states or reasonably implies that the legislature intended the new rate of interest to operate retroactively. On the contrary, the provision in the amended statute that the interest shall be allowed "commencing on the thirtieth (30th) day *from and after the time when the sum is due and payable*" clearly suggests that the statute shall be applied prospectively only. *See Coastal Industrial, Etc. v. Trinity Portland*, 563 S.W.2d 916 (Tex.1978); *Manley v. Sammons Enterprises, Inc.*, 563 S.W.2d 919 (Tex.1978). We therefore conclude that the August 27, 1979 amendment of article 5069–1.03 is applicable only to those open account transactions entered into after August 27, 1979, and not to those accounts entered into prior to that date although a balance on those accounts may still be outstanding after August 27, 1979. *Accord, Fibergrate Corp. v. Research—Cottrell, Inc.*, 481 F.Supp. 570, 571 n.1. (N.D.Tex.1979).

In summary, under the provisions of article 5069–1.03 as it existed to August 27, 1979, the amount of interest Concrete was allowed by law to charge, from the initiation of the open account relationship until the date of the charging made the basis of M.F.C.'s suit, was $939.94. It is undisputed that Concrete actually charged $1,892.59. Thus, because the total interest charged exceeded the amount of interest allowed by law, M.F.C. was entitled to the penalty prescribed by article 5069–1.06(1).[6] As an additional penalty under article 5069–1.06(2), the trial court correctly ordered Concrete to forfeit all principal and to pay reasonable attorney's fees.

## IV. IS THE AMOUNT OF M.F.C.'S RECOVERY LIMITED BY ITS PLEADINGS?

In its first amended original petition, as pertinent here, M.F.C. prayed for the following relief: "judgment against Defendant [Concrete] for the sum of Three Thousand Six Hundred Seventy Four and 04/100 Dollars ($3,674.04), representing three times the amount of usurious interest charged by Defendant [Concrete] to Plaintiff [M.F.C.]." Judgment was eventually rendered for M.F.C. in the sum of $4,533.96. The question by Concrete's fifth point of error is whether M.F.C. is limited to recovery of the specific sum prayed for, i.e., $3,674.04.

The settled law in Texas is that a judgment must conform to the pleadings. *Socony-Vacuum Oil Co. v. Aderhold*, 150 Tex. 292, 240 S.W.2d 751, 755 (1951); *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ.App.—Dallas 1980, no writ). In its rendition of judgment, the trial court is restricted to the "top dollar" alleged in plaintiff's pleadings. *Burk Royalty Co. v. Walls*, 596 S.W.2d 932, 938 (Tex.Civ.App.—Fort Worth 1980) *aff'd*, 616 S.W.2d 911 (Tex.1981). Though Concrete argues that the trial brief it submitted to the court prior to judgment constituted an amendment of its pleadings, we do not reach that question because the trial brief is neither in

---

6. None of Concrete's points of error challenge the trial court's construction of the penalties provided in article 5069–1.06(1). Our decision to affirm should not be read as disagreeing with the holding in *Smart v. Tower Land and*

*Development Company*, No. 20894, 635 S.W.2d 615 (Tex.App.—Dallas. 1982), since the question there decided—that the statute requires forfeiture only of double, rather than triple, interest—was not presented to us.

the record before us, nor would it properly be part of the appellate record. *See* Tex.R. Civ.P. Rule 376–a (Vernon 1967). Therefore, we hold that the judgment in favor of M.F.C. was excessive by $859.72; accordingly, we modify the judgment of the trial court to reduce it by that amount. We have considered the other points of error and find them to be without merit. Consequently, the judgment is affirmed, except for the modification previously mentioned.

Costs of this appeal are assessed ⁹⁄₁₀ to appellant, ¹⁄₁₀ to appellee.

Modified and affirmed.