**INDUSTRIAL DISPOSAL SUPPLY COMPANY, INC., Appellant,**

v.

**PERRYMAN BROTHERS TRASH SERVICE, INC. and Southern Refuse Company, Appellees.**

No. 04–81–00387–CV.

Court of Appeals of Texas, San Antonio.

Dec. 14, 1983.

Rehearing Denied Jan. 9, 1984.

Addai Scheinberg and Juan A. Vasquez, Leighton, Hood & Vasquez, San Antonio, for appellant.

Donald O. Ferguson, Gardner, Ferguson, Sommers & Dorr, Wm. Richard Davis, Gilliland, McNeel & Davis, San Antonio, for appellees.

Before ESQUIVEL, CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

Industrial Disposal Supply Company, Inc. (IDS), plaintiff below, appeals from a portion of the judgment in a suit on a sworn account rendered in its favor for the sum of $14,575.19 plus interest.

IDS limits its appeal to the portion of the judgment denying attorney's fees and denying recovery against appellee, Southern Refuse Company (Southern). Appellee, Perryman Brothers Trash Service, Inc. (Perryman) brings forth cross-points challenging the trial court's conclusion of law that the contract involved was not usurious and the trial court's denial of attorney's fees.

IDS filed its original petition on March 5, 1981, and its amended original petition on May 11, 1981. Perryman filed its original answer and counterclaim on June 11, 1981 asserting the defense and affirmative claim of usury and seeking statutory forfeiture.

IDS's suit against Perryman arose out of the acquisition of certain equipment used in Perryman's refuse hauling business. The suit sought to recover the value of numerous containers and other supplies and equipment as well as interest representing late charges.

IDS is in the business of selling a number of trash disposal related items including garbage trucks, trash containers, small parts and accessories. Perryman was in the business of hauling refuse for commercial and industrial customers. IDS maintained two accounts under the name of Perryman Brothers Trash Services, Inc. One account was for the sale of small parts including small tools, replacement parts, supplies and miscellaneous refuse industry related items. Perryman was regularly invoiced and billed directly for these small items. Perryman paid for the items on this account promptly and was considered, by IDS, to be a good customer. The second account contained orders for large equipment and trucks. These orders, although placed by Perryman, were normally billed to Industrial Leasing (Industrial), a leasing company which subsequently leased the equipment to Perryman. As a matter of customary practice, IDS extended a line of credit to Industrial. IDS allowed the equipment purchases to build up to a dollar value equal to the line of credit before invoices and bills were sent to Industrial. This generally meant that IDS did not bill Industrial for a period of 30 to 90 days after the equipment was received by Perryman.

Over a period of 8 to 10 years between 500 and 1,000 orders were placed by Perryman on both accounts. Each time an order was placed, an invoice form was used which contained in bold type letters: LATE CHARGE OF 1½% PER MONTH WILL BE ADDED AFTER 30 DAYS. Although the invoice states interest will be added after thirty days, the testimony indicated that the 1½% late charge accrued thirty days from the end of the month following the invoice date and that interest was charged to the account thirty days thereafter.

Late charges were assessed on only two occasions during this 8 to 10 year period. The charges totalled $108.00 on the small parts account and were paid by Perryman's bookkeeper. More recently, the late charges pertained to orders placed in August and September of 1980 and were billed to Perryman's large equipment account.

Prior to the August and September orders, it was customary practice for Perryman to accept delivery of the equipment by signing a bill of lading evidencing receipt.

At the time the containers and related items were ordered in August and September, it was understood that the items would be billed to the leasing company as had been the practice. However, on October 1, 1980, Southern acquired 100% of the outstanding capital stock of Perryman and Perryman was subsequently dissolved. Consequently, Lee Perryman[1] informed IDS to invoice Perryman, rather than Industrial.

On December 31, 1980, IDS billed Perryman, rather than the leasing company, seeking the amount of fourteen thousand sixty-seven dollars and sixty two cents ($14,067.62) plus an additional five hundred and seven dollars and fifty seven cents ($507.57) as current and prior late charges.

IDS's first and second points of error dispute the trial court's conclusion of law that IDS was not entitled to attorney's fees because it failed to present sufficient evidence to justify an award of attorney's fees.

IDS argues that attorney's fees were established as a matter of law pursuant to TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–1983) because IDS presented its claim for $14,575.19 to appellees at least thirty days prior to filing suit and payment was not tendered by either appellee. IDS made no effort to offer any evidence on the issue of reasonable attorney's fees through its attorney. In fact, IDS attempted to reopen after both parties had closed for the sole purpose of discharging its burden of establishing reasonable attorney's fees. In support of its claim IDS relied entirely upon testimony elicited during cross-examination of appellees' attorney wherein he allegedly stated that a reasonable amount of time

1. One of two sole owners of the Perryman Brothers Trash Services, Inc. prior to the sale of the company to Southern.

expended on this type of case for either plaintiff's or defendant's attorney was approximately sixty hours.

Appellant supports his argument with two lines of authority. The first line holds that an appellate court will award attorney's fees where the trial court, while denying attorney's fees, has made a factual determination of the amount of money that would constitute reasonable attorney's fees and the record discloses that a right to recovery was established as a matter of law. *Staley v. Zimmite Corp.,* 565 S.W.2d 335, 337 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

In the second line of authority, the trial court, in denying attorney's fees, makes no finding as to what would constitute reasonable attorney's fees even though the record confirms a right to recovery of attorney's fees as a matter of law. In these cases the appellate court has reversed and remanded for a determination of reasonable attorney's fees. *Woods Exploration & Producing Co., Inc. v. Arkla Equipment Co.,* 528 S.W.2d 568, 571 (Tex.1975); *Zemaco, Inc. v. Navarro,* 580 S.W.2d 616, 621 (Tex.Civ.App.—Tyler 1979, writ dism'd).

■ It is well established that an appellate court may not initiate an award of attorney's fees, because to do so would in effect be a usurpation of the trial court's fact finding function. *International Security Life Insurance Co. v. Spray,* 468 S.W.2d 347, 349 (Tex.1971); *Staley v. Zimmite Corp., supra* at 337.

IDS sought to recover reasonable attorney's fees pursuant to the provisions of TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–1983).

■ Article 2226 provides:

Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or accounts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees. The usual and customary fees in such cases shall be presumed to be reasonable, but such presumption may be rebutted by competent evidence. In a proceeding before the court, or in a jury case where the issue of amount of attorney's fees is submitted to the court for determination by agreement, the court may in its discretion take judicial knowledge of the usual and customary fees in such matters and of the contents of the case file without receiving further evidence. The provisions hereof shall not apply to contracts of insurers issued by insurers subject to the provisions of the Unfair Claim Settlement Practices Act (Article 21.21–2, Insurance Code), nor shall it apply to contracts of any insurer subject to the provisions of Article 3.62, Insurance Code, or to Chapter 387, Acts of the 55th Legislature, Regular Session, 1957, as amended (Article 3.62–1, Vernon's Texas Insurance Code), or to Article 21.21, Insurance Code, as amended, or to Chapter 9, Insurance Code, as amended, and each such article or chapter shall be and remain in full force and effect. This Act shall be liberally construed to promote its underlying purposes.

Said article expressly applies to suits on a sworn account. *Zemaco, Inc. v. Navarro, supra* at 620.

At trial, Donald Ferguson, attorney of record for Perryman, testified that pursuant to his employment by Perryman as attorney, both with respect to defending Perryman against IDS's claim and with respect to representing Perryman on its cross-claim against IDS, a total aggregate of $5,218.50 was incurred as attorney's fees. Ferguson supported his testimony with a computer

printout documenting the charges of $5,218.50 as attorney's fees.

During cross-examination of Ferguson by IDS's attorney the following transpired:

Q: ... What was your total hours expended in the defense and counterclaim of this matter, sir?

A: Fifty nine point plus, slightly less than sixty hours.

Q: And would you think that is a reasonable expenditure of time either on defense or the plaintiff posture in this particular lawsuit?

A: Yes ...

Q: For either a plaintiff or defendant's attorney, that was my question?

A: Well, here I are both.

IDS argues that Ferguson's offer of proof regarding the reasonable attorney's fees he sought to recover on behalf of Perryman, inures to the benefit of IDS so far as discharging its burden of proof on the matter is concerned.

■ Reasonableness of attorney's fees is a fact question and as such is required to be supported by competent evidence. *Bullock v. Foster Cathead Co.,* 631 S.W.2d 208, 212 (Tex.App.—Corpus Christi 1982, no writ); *Underhill v. Underhill,* 614 S.W.2d 178, 181 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Huntley v. Huntley,* 512 S.W.2d 767, 771 (Tex.Civ.App.—Austin 1974, no writ).

■ Evidence of some character is required to set the amount for judgment purposes, even in a non-jury case. *Uhl v. Uhl,* 524 S.W.2d 534, 538 (Tex.Civ.App.—Fort Worth 1975, no writ); *Underhill v. Underhill, supra* at 181.

We do not construe the foregoing statement by Perryman's attorney as a stipulation that IDS was entitled to the same amount of attorney's fees based upon an identical expenditure of time. Rather, it is clear that the statement is an affirmation of the time spent by Perryman's attorney in a dual capacity of defending one claim and advocating a counterclaim.

The rest of the record is entirely devoid of any evidence regarding time devoted by IDS's lawyers to represent IDS, the value of the services rendered or the necessity of the charges. IDS recognized that its proof was lacking when it rested its case and attempted to reopen for the purpose of tendering the required proof.

■ Although the trial court declined to permit IDS to reopen its case, no complaint is made on appeal of the trial court's action in this respect. Nevertheless, the trial court found, as a fact, that IDS presented its claim to Perryman and Southern more than thirty days prior to the date that IDS filed its suit against Perryman and Southern and that neither tendered payment to IDS in the amount claimed. The record supports the trial court's finding and Perryman and Southern do not dispute the findings. We hold that IDS has met its burden of showing entitlement to attorney's fees as against Perryman under article 2226 and is entitled to reasonable attorney's fees as a matter of law. We sustain IDS's first and second points of error, but we must remand to the trial court for a determination of what is a reasonable amount.

■ The reasonableness of attorney's fees is a question of fact. However, since the court below made no finding as to the reasonable value of the services of IDS's attorney, and since said value is not established as a matter of law, this court cannot make such a finding. *Chavez v. Aetna Finance Co.,* 553 S.W.2d 174, 178 (Tex.Civ.App.—San Antonio 1977) *writ ref'd n.r.e.,* 561 S.W.2d 799 (Tex.1978); *Zemaco, Inc. v. Navarro, supra* at 621.

■ The claim for attorney's fees is a severable claim and we are authorized to sever the claim and reverse and remand the judgment only insofar as it pertains to attorney's fees. *Woods Exploration & Producing Co., Inc. v. Arkla Equipment Co., supra* at 571; *Leal v. Leal,* 628 S.W.2d 168, 171 (Tex.App.—San Antonio 1982, no writ); *Saums v. Saums,* 610 S.W.2d 242, 244 (Tex.Civ.App.—El Paso 1980, writ dism'd); *Zemaco, Inc. v. Navarro, supra* at 621; *Hopkins*

*v. Hopkins,* 539 S.W.2d 242, 249 (Tex.Civ. App.—Fort Worth 1976, writ dism'd); *Huntley v. Huntley,* 512 S.W.2d 767, 771 (Tex.Civ.App.—Austin 1974, no writ).

IDS contends in its third point of error that the trial court erred in concluding that IDS presented insufficient evidence to justify holding Southern liable to IDS as an assignee on Perryman's debt to IDS.

IDS argues that the undisputed evidence established, as a matter of law, that Southern is liable to IDS on IDS's claim for $14,575.19 as well as for reasonable attorney's fees. IDS further predicates error in the trial court's refusal to allow into evidence a copy of a Stock Purchase Agreement by and between the sole shareholders of Perryman and Southern.

■ IDS's contention that the undisputed evidence establishes, as a matter of law, the opposite of the trial court's conclusion of law amounts to a "no evidence" challenge. Accordingly, we are required to view the evidence in the light most favorable to the ruling. Thus, we must discard all adverse evidence and consider only the evidence which supports the trial court's holding. *Brown v. Gonzales,* 653 S.W.2d 854, 857 (Tex.App.—San Antonio 1983, no writ); *San Antonio Bank & Trust v. Pletz,* 588 S.W.2d 797, 799–800 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

The Stock Purchase Agreement sought to be admitted in evidence by IDS is dated on or about September 22, 1980, and represents an acquisition by Southern of 100% of the outstanding capital stock of Perryman from Lee Perryman and W.J. Perryman, the only stockholders of Perryman.

A copy of the Agreement appears in the record as an attachment to IDS's First Amended Original Petition.

Following appellant's presentation of its case, appellees called, as a witness, Bill Joregan, vice president and general manager of Southern. During cross-examination, IDS sought to introduce the Stock Purchase Agreement into evidence. The trial court, indicated that it was willing to admit it only for limited purposes. However, no

further effort was made by IDS to have the exhibit marked and offered in evidence. Instead, IDS unsuccessfully interrogated the witness about the document and, although granted permission by the trial court to examine more extensively, the attorney for IDS elected not to pursue the matter. The document was, therefore, never admitted into evidence nor was a ruling secured from the court indicating the court's unwillingness to receive it.

■ In the absence of a tender, a refusal to admit, and the securing of some sort of ruling on the alleged exclusion of the document, there is nothing presented for review. *Alcazar v. Southwestern Bell Telephone Co.,* 353 S.W.2d 933, 935 (Tex. Civ.App.—Austin 1962, no writ). The record does not support IDS's contention that the trial court excluded evidence. Rather, it is clear that IDS abandoned any effort to have the document admitted in favor of testimonial evidence, which proved less than beneficial. Without more, the trial court was correct in holding that IDS failed to introduce sufficient evidence to hold Southern liable as an assignee.

IDS further argues that liability of Southern may, nevertheless, be established through admissions made by Southern in its first Amended Original Answer and Counterclaim. It is argued that Southern's counterclaim seeking recovery of penalties predicated upon usurious interest charges, forfeiture of principal claimed and reasonable attorney's fees necessarily admits the existence of an account between IDS and Southern. IDS reasons that Southern is judicially estopped from asserting that liability on the "admitted" account does not exist since it sought to obtain the benefits of the penalty provisions of the usury statutes. TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon Supp. 1982–1983).

Southern answers that its counterclaim was predicated upon the "charge" of interest alleged to be usurious since it was never a party to the account which was the basis of IDS's claim.

TEX.REV.CIV.STAT.ANN. art. 5069–1.-06 (Vernon Supp.1982–1983) provides in pertinent part:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

\* \* \* \* \* \*

IDS directs us to extracts from Southern's first Amended Original Answer and Counterclaim, to-wit:

Now comes Defendant, Southern Refuse Company, hereinafter called Buyer in response to the first Amended Original Petition of Plaintiff, Industrial Disposal Supply Company, Inc., hereinafter referred to as Seller, and filed this its . . . Counter claim and would show the court the following: . . . [T]he Seller invoiced and charged Buyer in excess of 18% interest on its account . . .

It is apparently IDS's contention that the designation of Southern as "buyer" in its answer/counterclaim together with the allegation that it was "charged" usurious interest on "its account" by IDS amounts to a judicial admission of liability on the account sued upon by IDS.

In an effort to substantiate its reasoning, IDS cites us to *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260 (Tex.1977) and *Hagar v. Williams,* 593 S.W.2d 783 (Tex.Civ. App.—Amarillo 1979, no writ), wherein it was held that the definition of "charge" as used in 5069–1.06 includes " . . . the unilaterally placing on an account an amount due as interest."

Thus, IDS argues there cannot be a "charging" of interest, as that term is used in 5069–1.06, without the existence of an account between the party who charges the interest and the party to whom such interest is charged.

■ We recognize that facts admitted in a pleading can be considered judicial admissions or a substitute for evidence. *Johnson v. Johnson,* 579 S.W.2d 30, 31 (Tex. Civ.App.—Beaumont 1979, no writ); *National Farmers Organization v. Smith,* 526 S.W.2d 759, 765 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Rosse v. Northern Pump Co.,* 353 S.W.2d 287, 292 (Tex.Civ. App.—Austin 1962, writ ref'd n.r.e.). Moreover, so long as the admission stands unretracted, the fact alleged or admitted, for the purposes of the case, is accepted as true by the court (and jury), and is binding on the party making it, i.e., he cannot introduce evidence to contradict it. *Johnson v. Johnson, supra* at 31; 2 C. MCCORMICK & R. RAY, TEXAS LAW OF EVIDENCE, CIVIL AND CRIMINAL § 1127 (Texas Practice 3rd ed. 1980).

Southern's counterclaim alleged in pertinent part:

Although there was no written or oral agreement to pay interest, the seller invoiced and charged buyer in excess of 18% interest on its account, copies of said invoices and charges are attached, verified and attached to plaintiff's First Amended Original Petition as Exhibits 'A' and incorporated herein as judicial admissions of Plaintiff and Cross Defendant Seller . . .

We believe that Southern's allegation that it was charged in excess of 18% interest on its account identified by reference to the invoices attached to IDS's petition can be interpreted as an admission that there was an account between the parties and that the account was the same as was being sued upon. However, IDS did not allege in its Amended Original Petition that Southern was liable to it by virtue of an existing account between them nor did it assume that posture during the trial on the merits.

We doubt that the allegations, even if considered judicial admissions, are sufficient to establish Southern's liability under IDS's pleadings and trial posture.

We note that IDS at no time contended in the trial court that Southern's pleadings were such admissions as to obviate necessity of evidence on the point. On the contrary, IDS treated the matter as a disputed issue by attempting to introduce the Stock Purchase Agreement and by eliciting testimony thereon.

The record further reflects through the testimony of Bill Joregan that Southern made attempts to establish an account relationship with IDS similar to the one existing between IDS and Perryman and involving a leasing company. According to Joregan, IDS refused to deal with Southern. Joregan denied ever hearing from IDS by mail, telephone or otherwise, regarding payment on the invoices. Joregan's testimony is unrefuted.

The evidence thus developed is contrary to the import of the purported judicial admission.

■ A judicial admission is waived when evidence contrary thereto is heard. *Dallas Transit Co. v. Young,* 370 S.W.2d 6, 11 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); *Restelle v. Williford,* 364 S.W.2d 444, 446 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.); 31A C.J.S. *Evidence* § 381c (1964); 71 C.J.S. *Pleading* § 161 (1951).

■ The evidence does not establish as a matter of law that Southern is liable to IDS as an assignee. On the contrary, the undisputed facts establish that IDS would have nothing to do with Southern even though Southern sought to create an account relationship with IDS. Therefore, we hold that the trial court's ruling is not without some support in the evidence. IDS's third point is overruled.

Appellee, Perryman brings three cross-points of error; the first two contesting the court's holding that the contract between Perryman and IDS was not usurious and the third contesting the trial court's denial of attorney's fees.

Cross-point of error one states: "The trial court erred in its Conclusion of Law number 1 'that the contract/account sued upon by IDS, in the amount of $14,575.19, is not usurious, because suit was filed before the effective date of House Bill 1228, and therefore the forfeiture clause is inoperative also, as amended May 9, 1982.' "

Perryman denied that the interest charged by IDS arose out of any agreement, oral or written. It further alleged that the interest rate charged was in violation of TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp.1982–1983) which provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable. (emphasis added.)

Forfeiture was sought under the provisions of TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon Supp.1982–1983) which provides:

> (1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except, that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

Forfeiture and attorney's fees were also sought under TEX.REV.CIV.STAT.ANN. art. 5069–1.06(2) (Vernon 1971) which, in pertinent part, provides:

Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court . . .

Because Perryman takes the position that a specific rate of interest was never agreed upon with IDS, it becomes critical to ascertain if such was the case in order to determine the applicability of article 5069–1.03.

■ The question of whether an agreement was reached by the parties is generally a question of fact where the existence of the agreement is disputed. *Haws & Garrett General Contractors, Inc. v. Gorbett Brothers Welding Co.,* 480 S.W.2d 607, 610 (Tex.1972). Whether the parties agreed to a specified rate of interest is disputed in the instant case. The trial court found, as a fact, that IDS invoices provided notice that a late charge of 1½% per month would be charged on late accounts and that Perryman had, on two occasions, paid the late charge without voicing objection.

TEX.BUS. & COM.CODE ANN. § 2.204 (Vernon 1968) provides in pertinent part:

(a) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(b) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

Recently, a similar, if not identical question, was presented to our Supreme Court in *Preston Farm & Ranch Supply v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex. 1981). *Preston Farm* involved a suit on a sworn account arising from a sale of goods and a counterclaim alleging usury. The question before the Court was whether there was evidence of an agreement to pay interest at a specified rate.

As in the instant case, no express agreement existed between the parties for the payment of interest. In concluding that an agreement existed between the parties, the Court relied upon "course of conduct" as defined in TEX.BUS. & COM.CODE ANN. § 2.204 (Vernon 1968) and upon pre-code case law addressing "contracts implied in fact." The Court in *Preston Farm* stated,

A contract implied in fact is one in which, under the circumstances, the acts of the parties are such as to indicate according to the ordinary course of dealing and the common understanding of men a mutual intention to contract, as where one accepts the tendered service of another under circumstances justifying the inference that such other expected to be paid for such services. . . . A contract implied from the facts and circumstances in evidence is as binding as would be an expressed one. (citations omitted.)

*Id.* at 298.

The classic example of an implied contract from course of dealing under the Uniform Commercial Code occurs where a buyer accepts delivery of goods with knowledge that the goods were offered at a certain price; in accepting the goods, the buyer impliedly agrees to pay the specified price. *See* 1A SQUILLANTE & J. FONSECA, WILLISTON ON SALES § 7–2 p. 199 (4th ed. 1973).

In finding evidence of a course of conduct giving rise to an agreement to pay interest, the Court recognized that the parties had extensive dealings with each other, that the monthly statements contained a service charge provision, that credit purchases continued with full knowledge of the service charge provision, that no objection to the service charge was ever made and that service charges were in fact paid.

Such conduct was likened by the Court to a transaction in which goods were accepted with knowledge that they were offered at a certain price. *Preston Farm,* 625 S.W.2d at 298.

In sustaining the trial court's finding that an agreement to pay specified interest existed, the Court stated, "[b]y his continued purchases and payments he at least impliedly agreed to pay the specified interest."

We think the conduct of Perryman equally gives rise to an implied agreement to pay the 1½% per month interest conspicuously appearing on IDS's invoices during their lengthy period of business dealings.

As in *Preston Farm* the parties in the instant case were "merchants" as that term is defined by TEX.BUS. & COM.CODE ANN. § 2.104 (Vernon 1968).[2]

■ Perryman and IDS had more extensive business dealings than did the parties in *Preston Farm.* In *Preston Farm,* the business transactions consisted of some twenty transactions spanning a period of over a year. Perryman and IDS dealt with each other some eight to ten years and transacted between five hundred and one thousand invoiced dealings with each invoice containing the late charge provision.

As in *Preston Farm,* Perryman never objected to the late charge provision conspicuously appearing on each invoice, and even acquiesced to the late charge by actually paying it on two occasions.

We think the instant case presents facts more persuasive than does *Preston Farm* for concluding that an implied agreement existed between the parties for the payment of a specified interest rate. We hold that Perryman knew or should have known that the late charge was being imposed, and, that by its continued purchases following payment of interest as late charges, Perryman impliedly agreed to pay interest at the rate of 1½% per month. *Preston Farm,* 625 S.W.2d at 298.

Perryman relies upon *Houston Sash & Door Co. v. Heaner,* 577 S.W.2d 217 (Tex. 1979); *Windhorst v. Adcock Pipe & Supply,* 547 S.W.2d 260 (Tex.1977); *Mecey v. Seggern,* 596 S.W.2d 924 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *Hagar v. Williams,* 593 S.W.2d 783 (Tex.Civ.App.—Amarillo 1979, no writ); *Watson v. Cargill, Inc., Nutrena Division,* 573 S.W.2d 35 (Tex.Civ.App. —Waco 1978, writ ref'd n.r.e.) and *Lafferty v. A.E.M. Developers & Builders Co.,* 483 S.W.2d 279 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).*

*Houston Sash* and *Watson* were both rejected as inapplicable in *Preston Farm* because in neither case was course of conduct giving rise to an agreement to pay interest raised on appeal. *See Preston Farm,* 625 S.W.2d at 300. We find them inapplicable for the same reason. The remaining authorities relied upon by Perryman are likewise inapplicable for the same reasons rendering *Houston Sash* and *Watson* inappropriate.

Perryman directs us to the recent case of *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443 (Tex. 1982) wherein the Supreme Court held that the failure of a buyer to complain about interest being added to invoices sent to it by a seller does not establish an agreement between the parties *where the buyer did not pay the interest charged. Id.* at 445–46. We are in accord with the statement in *Triton* and find it to be in complete harmony with the holding in *Preston Farm.*

*Preston Farm* specifically recognized that failure to object within a reasonable time, *without more,* does not establish an agreement. *Preston Farm,* 625 S.W.2d at 300. The Court took special note that evidence of an agreement arose because of continued purchases and payment of service charges. *Id.*

In *Triton,* the Court again points out that the unilateral act of charging interest coupled with a failure to object to the charging of interest cannot amount to acquiescence. Because Marine never paid the interest charged, there was no evidence of any conduct by Marine indicating its acceptance to the charging of interest. *Triton Oil & Gas Corp.,* 644 S.W.2d at 446.

We reject Perryman's contention that *Triton* lends support to its position.

---

**2.** (a) " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment or an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

TEX.REV.CIV.STAT.ANN. art. 5069–1.-02 (Vernon 1971), prescribing maximum rates of interest, sets the rate of interest which a creditor may charge on a non-written contract at 10% per annum. Where the parties do not agree upon an interest charge on an open account, an obligation to pay interest at the rate of 6% per annum arises by implication of law commencing on the thirtieth (30th) day from and after the time when the sum is due and payable. TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp. 1982–1983).

Any person charging more than the maximum legal rate allowed by Article 5069–1.-02 incurs the penalties imposed by Article 5069–1.06.

 Both Perryman and IDS are, however, corporations and corporations may agree to an interest rate not exceeding eighteen percent per annum, upon certain conditions. *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises,* 615 S.W.2d 258 (Tex.Civ.App.—Dallas), *aff'd,* 625 S.W.2d 295 (Tex.1981); TEX.REV.CIV. STAT.ANN. art. 1302–2.09 (Vernon 1980).

Article 1302–2.09 provides:

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited; however, nothing contained herein shall prevent any charitable or religious corporation from asserting the claim or interposing the defense of usury in any action or proceeding.

Article 1302–2.09 applies to debts based upon open account, *Dean Vivian Homes, Inc. v. Sebera's Plumbing & Appliances, Inc.,* 615 S.W.2d 921 (Tex.Civ.App.—Waco 1981, no writ) provided they meet the conditions of the statute. *See id.* at 926.

The record does not disclose the original principal amount of the credit extended. However, we believe there is sufficient evidence in the record indicating that the parties intended the advancement of and the actual advancement of aggregate sums exceeding Five Thousand Dollars ($5,000.00). Indeed, Perryman in its brief concedes as much, and the testimony confirms that Perryman purchased goods from IDS valued at over One Million Dollars ($1,000,000.00). Admittedly, the bulk of the sales to Perryman were pursuant to the leasing agreement with Industrial. Nevertheless, the evidence establishes that the parties contemplated a long term open account involving in excess of Five Thousand Dollars ($5,000.00) for the purchase of parts and other refuse related items.

IDS's exhibits 7 and 8, are records indicating payment by Perryman to IDS on items billed directly to Perryman and include late charges paid by Perryman on two occasions in 1980. These records reflect purchases of $2,121.61 and $15,282.62 representing some 35 separate invoices.

 We hold that the provisions of Article 1302–2.09 apply to the instant transaction between Perryman and IDS and that the charge of 1½% interest per month as agreed between the corporations was not in violation of the usury laws.

 Perryman argues further that IDS violated the provisions of Article 5069–1.-06(1) because it charged interest from the end of the month during which the materials were supplied, rather than from the day payment was due plus thirty days as required by law. The record does not bear out Perryman's contention. It was the practice of IDS and the exhibits bear out that late charges did not begin to accrue on IDS's invoices until 60 days from the last day of the month in which the statement

was mailed. Furthermore, Article 5069–1.-06(1) has application only when *no specified rate of interest is agreed upon* by the parties. Perryman's contention is without merit.

Perryman's Original Answer and Counterclaim was filed on June 11, 1981, although IDS's Original Petition had been on file since March 5, 1981. Perryman's claim seeking forfeiture was, therefore, not pending at the time House Bill 1228 became effective, May 8, 1981.

We must, therefore, determine whether the account sued upon by IDS is usurious under the laws in effect at the time and whether the forfeiture claim is valid under the statutes in effect when the claim arose.

Perryman's counterclaim alleged that the contract/account was usurious and sought penalties and forfeiture of any principal debt which it may have owed to IDS under the provisions of Article 5069–1.06(1), (2). House Bill 1228 has been incorporated into the statutes as art. 5069–1A.01. TEX.REV. CIV.STAT.ANN. art. 5069–1A.01 (Vernon Supp.1982–1983). The title is Conversion of Open-end Accounts, and states in pertinent part:

> Any creditor electing to implement the provisions of Article 1.04 of this Title, as amended, to an open-end account existing on the effective date of this Act and not previously subject to Article 1.04, as amended, must allow the obligor to pay the balance then existing at the rate previously agreed to and at the minimum payment terms previously agreed to.

*Id.*

Section 27 of the Act states:

> This Act shall be applicable to all claims of forfeiture made after the effective date of this Act but, with respect to claims of forfeiture in litigation pending at such effective date, the amount forfeited shall be determined under the provisions of the law as it existed prior to the effective date of this Act.

Interest-Alternative Rate Ceilings Act, ch. 111, § 27, 1981 Tex.Gen.Laws 286.

House Bill 1228 amends Article 5069–1.04 to read as follows:

> (a) The parties to any written contract may agree to and stipulate for any rate of interest ... that does not exceed:
>
> (1) an indicated rate ceiling that is the auction average rate quoted on a bank discount basis for 26-week treasury bills issued by the United States government, as published by the Federal Reserve Board, for the week preceding the week in which the rate is contracted for, multiplied by two, and rounded to the nearest one-quarter of one percent; or, as an alternative,
>
> (2) an annualized or quarterly ceiling that is the average of the computations under Subsection (1) of this section and is computed pursuant to Section (d) of this Article.
>
> (b)(1) If a computation under Section (a)(1), (a)(2), or (c) of this Article is less than 18 percent a year, the ceiling under that provision is 18 percent a year....

Thus, even under the provisions of Article 5069–1.04 as amended by HB 1228, the parties to any written contract may agree to a rate of interest that does not exceed 18% a year.

The trial court correctly concluded that the contract/account sued upon by IDS is not usurious and that forfeiture under the usury laws was not available to Perryman. Perryman's cross-points one and two are overruled.

Perryman's final cross-point assails the trial court's denial of attorney's fees.

Reliance was had upon the provisions of Article 5069–1.06(1) which provides for reasonable attorney fees to be fixed by the court in the event a violation of the usury laws is found to have occurred. Since the trial court correctly found that the contract/account sued upon by IDS was not usurious and that IDS did not contract for, charge or receive interest which is greater than the amount authorized by law, the trial court correctly denied Perryman attorney's fees. *Thornhill v. Sharpstown Dodge Sales, Inc.,* 546 S.W.2d 151, 153 (Tex.Civ.

App.—Beaumont 1976, no writ). Perryman's final cross-point is overruled.

The judgment is affirmed in part and reversed and remanded in part.