TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-98-00114-CV






Paul T. DeNucci, Appellant



v.



William Moretti, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 96-01767, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING 





 

 Paul DeNucci and William Moretti went into business together to build a golf
instruction academy and a golf course. Moretti withdrew from the projects before completion. 
DeNucci sued Moretti for damages, asserting causes of action for breach of contract, promissory
estoppel, negligent misrepresentation, fraud, and breach of fiduciary duty. The jury found in
favor of DeNucci on the issues of breach of contract, promissory estoppel, and negligent
misrepresentation, but the trial judge disregarded the jury's verdict and rendered judgment that
DeNucci take nothing. (1) We will reverse the judgment non obstante veredicto and render judgment
in favor of DeNucci.

THE CONTROVERSY


 DeNucci is a businessman with interests in several corporations in the Austin area,
including a golf practice facility known as the Ben White Golf Center. Moretti operates a golf
instruction school at the Hills of Lakeway on Lake Travis. The two men met in October 1993
while DeNucci was a student at Moretti's school. While discussing the business of golf, Moretti
explained to DeNucci that the owner of the land on which his school was located would not allow
Moretti to enter into a long-term lease. Moretti expressed interest in building a permanent home
for his golf instruction business.

 In February 1994, DeNucci and Moretti orally agreed to go into business together
to build and operate a golf instruction academy provided they found acceptable property and
financing. Over the next several months, DeNucci and Moretti investigated multiple tracts of land
in southeast Austin but for various reasons did not purchase any property. In November 1994,
a golf professional named Danny Britt suggested they expand their project to include a member-owned, private 18-hole golf course adjacent to the proposed golf academy. DeNucci and Moretti
decided to pursue this idea and concentrated their efforts on locating property large enough to
accommodate both a golf academy and a golf course. In December 1994, Decucci and Moretti
agreed that a 650-acre tract ("the Armstrong tract") located east of F.M. 973 near Highway 71
was suitable for their proposed development.

 DeNucci and Moretti formed two corporations, Academy of Golf Development,
Inc. ("the golf academy corporation") and Glenfield Development, Inc. ("the golf course
corporation"), to pursue the golf academy project and the golf course project. Both DeNucci and
Moretti contributed $40,000 to cover start-up costs into a checking account bearing the name of
the golf course corporation. On February 8, 1995, the golf academy corporation entered into an
earnest money contract with the owner of the Armstrong tract to purchase 60 acres on which to
build the academy. The contract provided that subject to closing on the 60-acre tract, the golf
academy corporation or its designee, the golf course corporation, had the option to purchase
another 190 acres. DeNucci and Moretti intended to use the additional acreage for the
construction of the golf course.

 DeNucci and Moretti agreed that for the golf course project to be feasible, a
minimum of 120 to 150 memberships had to be presold. On March 30, 1995, a "kickoff party"
was held to promote the proposed Glenfield Golf Club. Only twenty-three people signed in at the
event, and just eight people committed to join Glenfield. Shortly after the promotional party,
Moretti spoke to DeNucci and expressed his doubts concerning the success of the projects. On
April 29, DeNucci sent Moretti a letter detailing ways to restructure both the golf academy project
and the golf course project. Moretti responded by letter on May 1. The letter informed DeNucci
that Moretti was withdrawing from the projects.

 After receiving Moretti's letter, DeNucci attempted to complete the projects on his
own. By June 1995, DeNucci decided the projects were not economically viable and began to
liquidate the corporations' assets and pay the corporations' outstanding debts. Both corporations
were dissolved in December 1995. DeNucci then sued Moretti for damages.

 At trial, the court submitted nineteen questions to the jury. The first thirteen
questions addressed DeNucci's causes of action for breach of contract, promissory estoppel, fraud,
and negligent misrepresentation. The next three questions dealt with whether a partnership existed
on May 1, 1995, the date of Moretti's withdrawal, between DeNucci, Moretti, and a third
investor (2) to develop "a Golf Course, Academy, and driving range." The final three questions
covered whether Moretti waived claims against DeNucci; whether Moretti accepted an offer from
DeNucci to be released from the project; and whether DeNucci accepted an offer from Moretti to
be released from the project.

 With respect to DeNucci's breach of contract claim, the jury found that: (1)
Moretti and DeNucci agreed that the golf academy would be built without regard to whether the
golf course was built; (2) Moretti failed to comply with the agreement; (3) Moretti's failure to
comply was not excused; and (4) DeNucci suffered damages in the amount of $21,000 resulting
from Moretti's failure to comply. Regarding DeNucci's promissory estoppel claim, the jury found
that: (1) DeNucci substantially relied to his detriment on a promise by Moretti to develop the golf
academy without regard to whether the golf course was built, and that DeNucci's reliance was
foreseeable by Moretti; (2) DeNucci had not waived his promissory estoppel claim; and (3)
DeNucci suffered damages in the amount of $61,610 resulting from his reliance on Moretti's
promise. The jury also found that: (1) Moretti made a negligent misrepresentation on which
DeNucci justifiably relied; (2) DeNucci did not waive his negligent misrepresentation claim; and
(3) $65,000 would fairly and reasonably compensate DeNucci for damages proximately caused by
Moretti's negligent misrepresentation.

 The jury failed to find that: (1) Moretti committed fraud against DeNucci; (2) a
partnership existed on May 1, 1995 between DeNucci and Moretti to develop the golf academy
and the golf course; (3) Moretti waived his claim against DeNucci; (4) Moretti accepted an offer
from DeNucci to be released from the project; and (5) DeNucci accepted an offer from Moretti
to be released from the project.

 DeNucci filed a motion electing to recover actual damages under the theory of
promissory estoppel. See Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co., 747 S.W.2d 785,
787 (Tex. 1988) (when jury returns favorable findings on two or more theories, party has right
to judgment on theory entitling him to greatest or most favorable relief). Moretti filed a motion
for judgment n.o.v. "or, alternatively, disregarding jury answers" that presented multiple grounds
upon which judgment n.o.v. should be granted, including the existence of an at-will partnership
between DeNucci and Moretti, DeNucci's consent to the dissolution of the partnership, and
DeNucci's failure to present adequate proof to support his causes of action. The trial court held
as a matter of law that a partnership existed between the parties; therefore, the court denied
DeNucci's motion for entry of judgment on the verdict, disregarded the verdict, and rendered
judgment that DeNucci take nothing. (3)

 DeNucci presents several issues for review. First, he contends that the trial court
erred in ruling that a partnership existed between Moretti and DeNucci as a matter of law. If a
partnership did exist between the parties, DeNucci argues that it was error to allow Moretti to
withdraw without liability. Finally, DeNucci contends that the trial court erred in refusing to
grant his motion for entry of judgment on the verdict. 


DISCUSSION AND HOLDINGS


 A trial court may grant a judgment notwithstanding the verdict if there is no
evidence to support one or more of the jury findings on issues necessary to liability. Tex. R. Civ.
P. 301. In order to uphold a trial court's judgment n.o.v., an appellate court must determine that
no evidence supports the jury finding. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227
(Tex. 1990) (citing Williams v. Bennett, 610 S.W.2d 144, 145 (Tex. 1980)). In reviewing a "no
evidence" question, we consider all the evidence in the light most favorable to the jury finding,
indulging every reasonable inference in favor of the finding. See Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998) (citing Harbin v. Seale, 461 S.W.2d 591,
592 (Tex. 1970)). If more than a scintilla of evidence supports the finding, it must be upheld. 
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Mancorp, 802 S.W.2d
at 228. The evidence supporting the finding amounts to more than a scintilla if reasonable minds
could arrive at the finding given the facts proved in the particular case. See Crye, 907 S.W.2d
at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); William Powers, Jr.
& Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515,
522 (1991).

 DeNucci had the burden of proving breach of contract, promissory estoppel, or
negligent misrepresentation by a preponderance of the evidence. He obtained favorable jury
findings on all three issues. Moretti undertook the burden of proving that a partnership-at-will
existed on May 1, 1995 that embraced the entire golf academy/golf course enterprise. See
Stephanz v. Laird, 846 S.W.2d 895, 899 (Tex. App.--Houston [1st Dist.] 1993, writ denied).
Moretti argued that because the alleged partnership was not for a definite term and not for a
particular undertaking, he could withdraw from the partnership without liability for damages
resulting from the withdrawal. See Tex. Rev. Civ. Stat. Ann. art. 6132b-6.02 (West Supp. 1999)
("Texas Revised Partnership Act" or "TRPA"). (4) The jury's "No" answer to the partnership
question represented a failure of proof by Moretti, not an affirmative finding that no partnership
existed. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

 To be entitled to a judgment notwithstanding the jury's findings concerning
DeNucci's causes of action and the jury's failure to find that a partnership existed, Moretti had
to demonstrate that the evidence established a partnership as a matter of law. See Sterner, 767
S.W.2d at 690. When the jury fails to find a fact on which the party having the burden of proof
relies to avoid liability, and the trial court disregards the answer and enters a finding contrary to
it, we engage in a two-part analysis. Id. at 690. If there is evidence supporting the jury's failure
to find, the inquiry stops, as it was error to set that answer aside. Id.; see also Mancorp, 802
S.W.2d at 228. If, however, the failure to find is not supported by any evidence, we must
examine the record to determine whether the existence of a partnership was established as a matter
of law. See Sterner, 767 S.W.2d at 690. The evidence and inferences will always be considered
most favorably to the verdict. See Dowling v. NADW Marketing, Inc., 631 S.W.2d 726, 728
(Tex. 1982).

 We first review the record to determine if any evidence supports the jury's failure
to find that a partnership between DeNucci and Moretti existed on May 1, 1995. A partnership
is an association of two or more persons to carry on a business for profit as owners, whether the
persons intend to create a partnership and whether the association is called a "partnership," "joint
venture," or other name. See Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02(a) (West Supp. 1999). 
This relationship must be based on an agreement, either express or implied. See Coastal Plains
Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 287 (Tex. 1978). Since there was never an express
agreement to form a partnership between DeNucci and Moretti, for a partnership to exist, the
agreement must be implied from the relationship of the parties. See City of Corpus Christi v.
Bayfront Assoc., Ltd., 814 S.W.2d 98, 107 (Tex. App.--Corpus Christi 1991, writ denied). As
the issue was submitted to the jury, factors indicating the existence of a partnership include: (1)
receipt or right to receive a share of the profits of the business; (2) expression of an intent to be
partners in the business; (3) participation or right to participate in control of the business; (4)
sharing or agreeing to share losses of the business or liability for claims by third parties against
the business; and (5) contributing or agreeing to contribute money or property to the business. 
See Tex. Rev. Civ. Stat. Ann. art. 6132b-2.03(a) (West Supp. 1999). (5)

 DeNucci was repeatedly questioned about the nature of his business association with
Moretti. DeNucci testified that when he and Moretti initially went into business, they orally
agreed to own the business together and to share the profits and liabilities. DeNucci also testified
that both he and Moretti contributed money to the business and participated in the management
of the business. While DeNucci admitted that he had referred to Moretti as his "partner" on many
occasions, both orally and in writing, he denied ever entering into a partnership with Moretti to
pursue the golf academy and golf course projects. DeNucci stated, "I call anybody that I'm in
business with a partner, unfortunately, I guess. But that's the way I do it. I don't introduce my
business associates as, 'This is my fellow shareholder.' I mean, I realize we're a corporation, but
I use the word 'partner.'"

 DeNucci explained that upon finding a suitable piece of property on which to build
the golf academy and the golf course, he and Moretti formed two corporations, Academy of Golf
Development, Inc. and Glenfield Development, Inc. DeNucci testified that an attorney who had
represented him in prior business dealings drafted the incorporation documents. The certificate
and articles of incorporation for Glenfield Development, Inc. were filed with the Texas Secretary
of State on January 26, 1995. DeNucci and Moretti were designated as initial directors in the
articles. A unanimous written consent of directors, signed by both DeNucci and Moretti, recites
that DeNucci is president and treasurer of Glenfield Development, Inc., and Moretti is vice-president and secretary. The consent document also indicates that 100 shares of stock are
registered in the name of each man; a shareholders' agreement, signed by both men, defines their
rights as shareholders. The corporate bylaws were signed by Moretti in his capacity as secretary.

 Because Moretti's golf instruction school at the Hills of Lakeway operated under
the name Academy of Golf Dynamics, Inc., it was necessary for Moretti to grant his consent to
the incorporation of the golf academy under a similar name. The certificate and articles of
incorporation for Academy of Golf Development, Inc. were filed with the Texas Secretary of State
on February 3, 1995. DeNucci and Moretti were designated as initial directors in the articles. 
DeNucci testified that there was no agreement or understanding between him and Moretti, as a
partnership, to share profits or losses from either Glenfield Development, Inc. or Academy of Golf
Development, Inc.

 With the full legal existence of both corporations established, see Tex. Bus. Corp.
Act Ann. art. 3.04(A) (West Supp. 1999), DeNucci and Moretti focused their efforts on acquiring
the 60-acre golf academy tract. DeNucci testified that he and Moretti did not plan to purchase the
tract as a partnership; indeed, the earnest money contract for the purchase of the property recites
that the contract was entered into by and between the seller and Academy of Golf Development,
Inc., "a Texas corporation wholly owned by Paul T. DeNucci and William Moretti." DeNucci
signed the contract in his capacity as president of the golf academy corporation.

 DeNucci testified that after the earnest money contract was signed, the golf
academy corporation applied for a loan with Horizon Bank and Trust to finance both the purchase
of the 60-acre tract and the construction of the golf academy. The record contains several
documents indicating that Academy of Golf Development, Inc. was the borrower, not DeNucci
and Moretti individually. Both the golf academy corporation and the golf course corporation
entered into an agreement with Cupp Design, Inc. and Tom Kite Development to design the golf
course. (6) The agreement was signed by DeNucci as president of the golf course corporation. 
Furthermore, the golf course corporation retained an architecture firm to design the golf course
clubhouse and the golf academy.

 The golf course corporation also leased office space and hired two employees to
solicit prospective members. The record reflects that both DeNucci and Moretti signed the
employment contract of the sales director as representatives of Glenfield Development, Inc. 
Although all expenditures related to the marketing effort were made from the golf course
corporation account, DeNucci testified that both corporations benefitted from the expenditures
because the golf academy project and the golf course project were being developed concurrently.

 The parties agreed that the question of whether a partnership existed between
DeNucci and Moretti on May 1, 1995 would be submitted to the jury. (7) See Ben Fitzgerald Realty
Co. v. Muller, 846 S.W.2d 110, 120 (Tex. App.--Tyler 1993, writ denied) (whether partnership
exists is primarily a question of fact, and trier of fact must consider all factors indicating creation
of partnership in determining whether it exists). It was necessary for the jury to infer the existence
of a partnership from the relationship of the parties. The jury, after being properly instructed
concerning the TRPA definition of partnership and factors indicating the creation of a partnership,
failed to find that a partnership existed.

 Considering the evidence presented in light of the factors indicating the creation of
a partnership, the jury could have determined that the presence of certain factors, such as DeNucci
and Moretti each: (1) contributing money to the business, (2) possessing the right to receive a
share of profits of the business, and (3) participating in the control of the business, was as
consistent with the creation of two corporate entities to develop the golf academy and golf course
as with the existence of a partnership. Moreover, DeNucci steadfastly maintained that any losses
from the projects would be absorbed by the corporations rather than by him and Moretti
individually. Finally, although DeNucci admitted to referring to Moretti as his "partner"
numerous times, mere legal conclusions by a lay witness do not prove the existence of a
partnership. See Muller, 846 S.W.2d at 121 (statements by lay witness that he and two other men
"were partners on the job" was a pure legal conclusion). Viewing all of the evidence in a light
most favorable to the jury's answer, we determine that the jury's failure to find that a partnership
existed between DeNucci and Moretti on May 1, 1995 to develop a golf academy and a golf course
is supported by ample evidence. The trial court erred in holding that a partnership existed between
the parties as a matter of law and rendering a take nothing judgment.

 While the trial court did not explicitly grant Moretti's motion for judgment
n.o.v./motion to disregard jury findings, the court did grant Moretti the relief he sought based
solely upon his argument that a partnership existed. When a trial court specifies its reason for
granting a judgment n.o.v., the appellant need only discredit that ground of the appellee's motion;
the appellant is not required to challenge the judgment on other grounds asserted in the motion but
not relied on by the trial court. See Angelo Broadcasting, Inc. v. Satellite Music Network, Inc.,
836 S.W.2d 726, 733 (Tex. App.--Dallas 1992, writ denied), overruled on other grounds by
Hines v. Hash, 843 S.W.2d 464, 469 (Tex. 1992). However, the appellee may assert on appeal
those grounds alleged in his motion for judgment n.o.v., but not relied upon by the trial judge in
rendering judgment, to attempt to vitiate the verdict. See Voskamp v. Arnoldy, 749 S.W.2d 113,
118 (Tex. App.--Houston [1st Dist.] 1987, writ denied).

 Because Moretti has raised on appeal the other grounds asserted in his motion, see
Tex. R. App. P. 38.2(b), we will address them as necessary, beginning with Moretti's contention
that DeNucci cannot recover under promissory estoppel. Promissory estoppel allows a cause of
action to a promisee who has acted to his detriment in reasonable reliance on an otherwise
unenforceable promise. See Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965); Bailey v. City
of Austin, 972 S.W.2d 180, 193 (Tex. App.--Austin 1998, writ denied). The elements of
promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and
(3) substantial reliance by the promisee to his detriment. See English v. Fischer, 660 S.W.2d 521,
524 (Tex. 1983). Recoverable damages are only the amount necessary to put the promisee in the
position he would have been in had he not acted in reliance on the promise. See Wheeler, 398
S.W.2d at 97.

 The jury was asked three questions regarding promissory estoppel and answered
as follows:


Did Paul Denucci substantially rely to his detriment on a promise by William
Moretti, if any, to develop the Golf Academy on the Armstrong Tract without
regard to whether the Glenfield Golf Course was built, and was this reliance
foreseeable to William Moretti? YES


Has Paul Denucci waived this claim against William Moretti? NO


What sum of money, if any, if paid now in cash, would fairly and reasonably
compensate Paul Denucci for his damages, if any, that resulted from his reliance
on William Moretti's promise? $61,610



By cross-point, Moretti argues that: (1) the damage award is not supported by the evidence, and
(2) DeNucci cannot recovery under promissory estoppel because the jury found a contract existed.

 DeNucci repeatedly testified that his agreement with Moretti was to build the golf
academy even if the golf course project proved to be unfeasible. DeNucci also testified that he
acted in reliance on Moretti's representations that the 60-acre tract was acceptable even if the
option to purchase the additional 190 acres was never exercised. Danny Britt testified that he
heard Moretti make representations in DeNucci's presence that the golf academy would be built
on the Armstrong tract even if the golf course was not built. Moreover, Tom Kite testified that
from conversations he had with DeNucci and Moretti, he understood that the golf academy would
be built regardless of whether the golf course was built; Kite stated that "never in our minds was
this, you know, one entity all tied together. It was--It was two separate entities." We find that
there is some evidence of DeNucci's reliance on promises made by Moretti to develop the golf
academy without regard to whether the golf course project was built. (8)

 When asked to elaborate on the damages that resulted from his reliance on Moretti's
promise to develop the golf academy regardless of whether a golf course was built adjacent to the
academy, DeNucci testified that he would not have spent any money developing either the golf
academy or the golf course had Moretti not made such a promise. DeNucci broke his damages
down into three components: (1) his $40,000 contribution to the golf course corporation account;
(2) $21,784 he paid to an employee hired to oversee an existing business so DeNucci could devote
his time to the golf academy and golf course projects; and (3) $21,610 spent to satisfy outstanding
debts of the golf academy and the golf course corporations before the corporations were dissolved. 
A jury could have reasonably awarded DeNucci $61,610 in damages for expenditures he made in
reasonable and justifiable reliance on Moretti's promise to develop the golf academy. See Crye,
907 S.W.2d at 499.

 Furthermore, the jury's failure to find that DeNucci waived his promissory estoppel
claim was supported by more than a scintilla of evidence. The crux of Moretti's waiver claim is
that in DeNucci's April 29 letter to Moretti, DeNucci consented to Moretti's withdrawal from the
projects without further liability. DeNucci testified that the letter was "absolutely not" an offer
to Moretti to withdraw without any liability; rather, the purpose of the letter was to respond to
Moretti's concerns that he would not make enough money from the golf academy by suggesting
ways to restructure the project. The jury believed DeNucci and refused to find that he had
excused, waived, or released any of his claims against Moretti.

 Finally, Moretti's argument that the breach of contract jury finding precludes
DeNucci from recovering on his cause of action for promissory estoppel is without merit. While
it is true that promissory estoppel and breach of contract are mutually exclusive causes of action, (9)
DeNucci was entitled to allege inconsistent claims. See Tex. R. Civ. P. 48; Regency Advantage
L.P. v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996). The only requirement to
allow submission of inconsistent theories to the jury is that there be evidence to support the issues. 
See Brown v. Goldstein, 685 S.W.2d 640, 642 (Tex. 1985).

 Moretti failed to object to the submission of the promissory estoppel question on
the ground that an enforceable contract existed, (10) and DeNucci secured favorable findings on both
theories. When a party tries a case on alternative theories, the party has a right to a judgment on
the theory entitling him to the greatest or most favorable relief. See Tex. R. Civ. P. 301; see also
Boyce Iron Works, Inc., 747 S.W.2d at 787. Therefore, DeNucci was entitled to elect to recover
on his promissory estoppel claim. Because we have determined that the jury's answers concerning
promissory estoppel were supported by some evidence, we need not consider the other grounds
for judgment n.o.v. asserted by Moretti. 


CONCLUSION


 Having found that more than a scintilla of evidence exists to support the jury's
verdict, we reverse the judgment non obstante veredicto and render judgment on DeNucci's
promissory estoppel claim in the amount of $61,610. Since the trial court allowed DeNucci no
recovery on his primary suit, it could not allow DeNucci to recover attorney's fees. As we have
determined that DeNucci was entitled to recover on his claim for promissory estoppel, he may now
seek to recover attorney's fees under Civil Practice and Remedies Code section 38.001(8). See
Traco, Inc. v. Arrow Glass Co., Inc., 814 S.W.2d 186, 193 (Tex. App.--San Antonio 1991, writ
denied) (citing Preload Technology, Inc. v. A.B. & J. Constr. Co., Inc., 696 F.2d 1080, 1094 (5th
Cir. 1983) (construing Texas law)).

 Because there was no determination of the amount of attorney's fees to be awarded,
the question of the appropriate amount is for the trial court. See Industrial Disposal Supply Co.,
Inc. v. Perryman Bros. Trash Serv., Inc., 664 S.W.2d 756, 761 (Tex. App.--San Antonio 1983,
writ ref'd n.r.e.); Behring Int'l, Inc. v. Greater Houston Bank, 662 S.W.2d 642, 652 (Tex.
App.--Houston [1st Dist.] 1983, writ dism'd). Therefore, we remand the severable portion of the
case to the trial court so that it may address the issue of attorney's fees to be awarded. See Tex.
R. App. P. 43.3; Industrial Disposal, 664 S.W.2d at 761.

 We also remand to the trial court the calculation of the amount of prejudgment
interest. See Tex. Fin. Code Ann. §§ 304.003, .103, .104 (West 1998).



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Jones and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: April 29, 1999

Do Not Publish

1. "[U]pon motion and reasonable notice the court may render judgment non obstante veredicto
if a directed verdict would have been proper, and provided further that the court may, upon like
motion and notice, disregard any jury finding on a question that has no support in the evidence." 
Tex. R. Civ. P. 301.
2. The participation of the third investor does not affect the outcome of this appeal.
3. The trial court judgment does not recite that Moretti's motion for judgment n.o.v. is granted;
rather, it denies DeNucci's motion for entry of judgment on the verdict and states, "It is further
ordered, adjudged, and decreed that plaintiff Paul T. DeNucci take nothing of and from defendant
William Moretti."
4. The legislature revised the Texas Uniform Partnership Act in 1993, effective January 1994. 
See Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, 1993 Tex. Gen. Laws 3887. The Texas
Revised Partnership Act ("TRPA") applies to partnerships formed on or after January 1, 1994 or
to partnerships formed before January 1, 1994 that elect to be governed by the Act. See Tex. Rev.
Civ. Stat. Ann. art. 6132b-11.03 (West Supp. 1999). As the alleged partnership at issue in this
appeal was formed no earlier than February 1994, the TRPA controls our determination of the
existence of a partnership. 
5. The comment of the Partnership Law Committee following article 6132b-2.03 of TRPA, in
discussing what factors indicate that a partnership has been created, states that "[g]iven the variety
of arrangements that people make, . . . it is not feasible to say exactly which factors must be
present, or what the relative weights of the factors should be."
6. While the first page of the agreement recites that both corporations own the property to be
developed, the signature page indicates that the golf course corporation is the owner.
7. Moretti initially objected to a portion of the jury question concerning the existence of a
partnership. Moretti argued that DeNucci had affirmatively testified to the existence of all five
factors listed in TRPA article 6132b-2.03(a) indicating the creation of a partnership; therefore, it
was misleading to allow the jury to consider the factors not indicating the creation of a partnership
listed in TRPA article 6132b-2.03(b). Moretti later withdrew his objection.
8. The record also reflects the integral part Moretti's reputation as a premier golf instructor
played in the development of the golf academy. For example, professional golfer Tom Kite
testified that Moretti is one of "the top teachers in the game" and stated that a golf instruction
facility "could never survive" without a "top-notch instructor."
9. See Boy Scouts of America v. Responsive Terminal Sys., Inc., 790 S.W.2d 738, 742 n.1
(Tex. App.--Dallas 1990, writ denied) (citing Fretz Constr. Co. v. Southern Nat'l Bank of
Houston, 600 S.W.2d 878, 880 (Tex. Civ. App.--Houston [1st Dist.] 1980), rev'd on other
grounds, 626 S.W.2d 478 (Tex. 1981)).
10. Moretti also failed to object to the promissory estoppel question being unconditionally
submitted to the jury. In fact, Moretti's attorney stated that the promissory estoppel question
contained "a correct statement of the law with regard to the elements of damages that can be
recovered in promissory estoppel." See Tex. R. Civ. P. 274; see also Castleberry v. Branscum,
721 S.W.2d 270, 276 (Tex. 1986) (complaints about the charge are waived unless an objection is
made that specifically points out the matter complained of and the ground of the objection).


x.
App.--Houston [1st Dist.] 1983, writ dism'd). Therefore, we remand the severable portion of the
case to the trial court so that it may address the issue of attorney's fees to be awarded. See Tex.
R. App. P. 43.3; Industrial Disposal, 664 S.W.2d at 761.

 We also remand to the trial court the calculation of the amount of prejudgment
interest. See Tex. Fin. Code Ann. §§ 304.003, .103, .104 (West 1998).



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Jones and Patterson

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: April 29, 1999

Do Not Publish

1. "[U]pon motion and reasonable notice the court may render judgment non obstante veredicto
if a directed verdict would have been proper, and provided further that the court may, upon like
motion and notice, disregard any jury finding on a question that has no support in the evidence." 
Tex. R. Civ. P. 301.
2. The participation of the third investor does not affect the outcome of this appeal.
3. The trial court judgment does not recite that Moretti's motion for judgment n.o.v. is granted;
rather, it denies DeNucci's motion for entry of judgment on the verdict and states, "It is further
ordered, adjudged, and decreed that plaintiff Paul T. DeNucci take nothing of and from defendant
William Moretti."
4. The legislature revised the Texas Uniform Partnership Act in 1993, effective January 1994. 
See Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, 1993 Tex. Gen. Laws 3887. The Texas
Revised Partnership Act ("TRPA") applies to partnerships formed on or after January 1, 1994 or
to partnerships formed before January 1, 1994 that elect to be governed by the Act. See Tex. Rev.
Civ. Stat. Ann. art. 6132b-11.03 (West Supp. 1999). As the alleged partnership at issue in this
appeal was formed no earlier than February 1994, the TRPA controls our determination of the
existence of a partnership. 
5. The comment of the Partnership Law Committee following article 6132b-2.03 of TRPA, in
discussing what